Ralph M. Nelson and Roy W. Wininger

*v.*

State of Tennessee.

413 S.W.2d 358.

(*Knoxville*, September Term, 1966.)

Opinion filed February 24, 1967.

Petition for rehearing Denied April 7, 1967.

682

BURKETT C. McINTURFF, Kingsport, for plaintiff in error.

WILLIAM H. CATE and LYNN M. LAUDERBACK, Kingsport, on petition to rehear for plaintiffs in error.

GEORGE F. McCANLESS, Attorney General, and ROBERT F. HEDGEPATH, Assistant Attorney General, Nashville, for the State; and JOHN C. WOOTEN, District Attorney General, Kingsport, prosecuted the case for the State in the trial court.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The plaintiffs in error were convicted of accepting a bribe, and were sentenced to serve two (2) years in the State penitentiary for this offense. From this conviction they have seasonably appealed, briefs have been filed, arguments heard, and we now have the matter for disposition.

This record shows that on or about August 1, 1965, a citizen of Sullivan County was involved in an automobile accident. A Deputy Sheriff of that county investigated the wreck and found this citizen driving this car very much intoxicated. Later the Deputy Sheriff, who made the original investigation, was joined by plaintiff in error, Nelson, in the investigation. The first officer who arrived at the scene of this wreck called wreckers so that the wrecked automobiles could be removed from the highway. One of the wreckers called was owned and driven by the plaintiff in error, Wininger. The plaintiff in error, Nelson, arrived at the scene of the accident with Wininger. The citizen who was driving the automobile was placed in the patrol car and carried to jail.

Plaintiff in error, Nelson, informed the officer who made the original investigation that he would like to prepare the arrest report and the warrant against this citizen. The first officer who turned the matter over to Nelson said, "The best I recall I believe he made the statement that he had been waiting on that a long time, that Mr. Moore almost got him and another officer fired in Johnson City, and he had been waiting a long time to catch him." This statement was what plaintiff in error, Nelson, said to this officer.

Upon arriving at the jail, plaintiff in error, Nelson, prepared an arrest report disclosing that Moore, the citizen, had been arrested for DWI (driving while intoxicated). At that time a blank warrant was signed by plaintiff in error, Nelson, which also charged Moore with DWI. Nelson took his driver's license, as is customary when one is arrested for DWI.

In the report which Nelson prepared, it was disclosed that the trial was set for 11:00 a.m. on the following Tuesday. Officer Hearne, who made the original investigation, appeared in court at that time and there was no one there. This officer testified that he saw Nelson later that afternoon and that he was told then that Moore had been tried on Monday, that is prior to the time the case was set, and that Moore was very pleased that he had been treated so nicely by the officers.

Mr. Moore, the citizen, testified that he had a wreck while drinking and that the plaintiff in error, Nelson, took him to jail; he said he was released from jail and went to see the plaintiff in error, Wininger, about his tow bill. Moore states that he told Wininger that he was very much interested in keeping the publicity down. Wininger then told him that he thought he might be able to help in this matter but that it would cost him $500.00. Moore put $500.00 on Wininger's desk and picked up his driver's license which had been confiscated by Nelson at the time of the original arrest.

Subsequent to this, an investigation took place by an agent of the Tennessee Bureau of Investigation. This agent testified that in the course of his investigation he discovered that Mr. Moore had been arrested on a charge of DWI and that the charge had later been reduced to

public drunkenness in the General Sessions Court. A
Deputy Clerk of that court testified that Mr. Moore was
fined $10.00 for public drunkenness. An officer in charge
of the jail testified that he made an entry in the official log
book of the county jail that Mr. Moore was arrested for
DWI. This jail officer testified that this log book entry
was made from the arrest report which was prepared by
the plaintiff in error, Nelson.

The judge of the General Sessions Court at Kingsport
testified that the plaintiff in error, Nelson, brought him
an arrest warrant against Mr. Moore on the morning
following the arrest which charged Moore with public
drunkenness. This apparently was an unusual occurrence
inasmuch as Nelson had taken a cash bond from Mr.
Moore without first contacting the General Sessions
Judge about it.

The assignments of error are to the effect that (a) the
court erred in failing to quash the indictment; (b) that
the evidence preponderates against the verdict and in
favor of the innocence of the accused; and (c) that the
charge of the court was insufficient.

■■ The argument with reference to failing to quash
the indictment alleges there are some two or three
charges in the one count and that such an indictment is
faulty and thus it should have been quashed. When read-
ing the indictment it does not say that plaintiffs in error
were charged with violating any particular statute, but
merely says that these two plaintiffs in error "did unlaw-
fully and feloniously, each acting in concert with the
other, corruptly accepted or agreed to accept money in
the amount of $500.00 with the corrupt or evil intent to
refrain or desist from prosecution of Roy B. Moore, the
said Roy B. Moore having been arrested by defendant

Ralph M. Nelson, a deputy sheriff, on a charge of driving while under the influence of an intoxicant. That said defendants, pursuant to the same common criminal enterprise, did corruptly promise to return to Roy B. Moore his drivers license and fix the case.''

The argument is made that this single count indictment more or less contains two or three different charges, charging both bribery and conspiracy, and it is argued that the Deputy Sheriff is indicted under sec. 39-804, T.C.A., and that the private citizen, Wininger, is indicted under sec. 39-803, T.C.A. As we read the indictment we do not so think. We have quoted the pertinent portions of the indictment above and cannot see how that this could possibly be true.

Section 39-803, T.C.A., makes it a felony for any person to offer a bribe to a peace officer, whereas the following section, 39-804 T.C.A., makes it a felony for a peace officer to accept a bribe. The last section, of course, includes in it a reference to sec. 39-803, T.C.A., by saying that if any peace officer mentioned in that section does take a bribe he is so guilty. This indictment obviously is against the peace officer, Nelson, for accepting the bribe and against Wininger, a private citizen, as an aider and abettor to Nelson. In other words, the statutes as such do not make it a crime to give a private citizen money, but this private citizen must be in league with some of the peace officers mentioned in this statute; if the bribe is passed through the private citizen to the peace officer, then as a result of attempting to bribe this way this private citizen is merely an aider and abettor. This indictment does not charge Moore who would be indictable under sec. 39-803, T.C.A., by offering the bribe, but this indictment is

against the peace officer and the private citizen who aided and abetted the peace officer in accepting this bribe.

Section 39-109, T.C.A., provides in effect that anyone aiding and abetting in any criminal offense shall be deemed as a principal. Thus it is that when we read the indictment, as above copied, we find it is charged that both Nelson and Wininger acted in concert and ''corruptly accepted or agreed to accept money * * *'' We have carefully read the charge of the court and this is exactly what the court charged the jury, that is, the law with reference to aiding and abetting, which it is.

It is next argued that the evidence preponderates against the verdict of the jury and in favor of the innocence of the accused. In arguing this assignment counsel takes the position that when Mr. Moore testified in this case he testified as to the facts as heretofore related but didn't say anywhere that he was giving this money as a bribe or that that was the purpose of it at all. Since he didn't say he was giving this as a bribe, he was merely giving it to cut down publicity, and it was not a bribe and the corpus delicti of such an offense had not been established and thus the case should be dismissed.

In the first place in establishing the corpus delicti, circumstantial evidence may be offered to show whether or not one was guilty of accepting a bribe. See Wharton's Criminal Evidence, 12th Ed., Vol. 3, p. 469, and many cases there cited. Of course, when Mr. Moore testified he testified as to the facts; he didn't have to call it a bribe, but it is from these facts of what he did and what happened whether or not we determine there was a bribe. As heretofore related, the facts show that he was very drunk and was arrested for driving while intoxicated, and

it is perfectly obvious to all that this is an entirely different crime from being arrested for public drunkenness, and carries with it many greater penalties than that for public drunkenness. When the facts show that he gave Officer Nelson the money to cover a fine for public drunkenness and then he went and talked to the truck operator who told him it would cost him $500.00 which he laid down on the desk, and then picked up his driver's license which the officer had left there; there is no other conclusion that a jury or common sense people could reach than that a bribe had been offered and accepted.

People just don't go out and say I bribed John Jones to do so and so, John Jones being a peace officer. In the first place, if people do things of this kind they don't talk about it; it is generally done in secret and they don't expect anybody to find it out. In the second place, if they do such a thing they would be subject to indictment for offering such a bribe under sec. 39-803, T.C.A., and thus it is from these circumstances the corpus delicti is established.

The argument goes on, of course, in behalf of these plaintiffs in error and it is stated that Mr. Moore was merely charged with public drunkenness and paid a fine for that; he had never actually been charged in court with drunk driving, or DWI; and that no crime had been committed. But from the facts as heretofore detailed the man was very drunk, caused this wreck and was charged as shown by these other papers in the first instance with DWI; then when it got before the Sessions Judge it was a mere charge of public drunkenness. Clearly it seems to us that such facts overwhelmingly support the conclusion that this money was paid so as to reduce the charge from that of DWI to public drunkenness.

There is no crime so far as we know in the Sections of the Code herein referred to in this opinion which purport to make it a crime to reduce a charge, but this was a bribe for Nelson to do this and this statute makes it a crime when a peace officer accepts any gift or gratuity for his promise to refrain or desist from performing his duty. Under the facts of this case, it was clearly the peace officer's duty to charge this man with the more serious crime. The conclusions hereinabove reached become more evident when it was shown by Officer Hearne that the plaintiff in error, Nelson, told him that he was anxious to prosecute Mr. Moore; that he would begin a proper prosecution against him for DWI; and then when Moore paid the $500.00 his records were attempted to be destroyed and a new record made. Under such circumstances the State has in our judgment precluded any other reasonable conclusion other than the plaintiffs in error were bribed.

We in this State have said many times—it would take an adding machine to add them up—in opinions for publication as well as opinions not for publication that the verdict of a jury when approved by the trial judge accredits the testimony of the State and resolves all conflicts in favor of the theory of the State. By the jury verdict, approved by the trial judge, the credibility of the witnesses is determined. Such a verdict displaces a presumption of innocence and creates here a presumption of guilt. It is only when the evidence so greatly preponderates against such a verdict that we will reverse for this reason. The burden here is on the accused who has been convicted to show us that the evidence so preponderates. In the instant case we certainly think that the evidence preponderates in favor of the finding of the jury. See

*Cooper v. State,* 123 Tenn. 37, 138 S.W. 826, and many cases that may be found by Shepardizing the *Cooper* case.

██ It is very forcefully argued herein that the trial judge committed error when he charged the jury that a warrant was not necessary to charge the plaintiffs in error with an offense. We think this was a correct charge. Section 40-803 T.C.A., provides among other things that an officer "without a warrant" may arrest a person for a public offense committed or a breach of the peace threatened in his presence. This then brings up the question of whether or not this offense was committed in his presence. A crime is committed in the presence of an officer "Where an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without a warrant." *Massa v. State,* 159 Tenn. 428, 430, 19 S.W.2d 248, 250; *McCanless v. Evans,* 177 Tenn. 86, 91, 146 S.W.2d 354, 356. "This Court has many times held that where an officer of the law has direct personal knowledge from one or more of his five senses of sight, hearing, smell, touch, or taste that the suspected person is committing a crime in his presence, he may lawfully arrest him." *Day v. United States,* 8 Cir., 37 F.2d 80, 81. So it is, the trial judge correctly charged the jury.

Here one Deputy Sheriff found the man drunk and that he had had this wreck and he wasn't required to get a warrant then, but later a warrant charging drunk driving was prepared the way the officers do there. The proof showed that he was drunk and then when this $500.00 was laid down on the desk of Wininger this charge was changed. In other words, it certainly took the $500.00 to get the DWI down to public drunkenness—this was done through the concerted effort of the officer and the truck

driver, who was aiding and abetting the officer. It was clearly an accepted bribe.

Then it is argued that the charge of the court was insufficient. We have carefully, as heretofore said, read this charge and feel that it unquestionably covers every point and was a thorough and fair charge for both sides. The question of circumstantial evidence was correctly charged, and as to the effect of circumstantial evidence what the jury should find. The concluding statement with reference to circumstantial evidence was: ''It is not sufficient that the proven circumstances coincide and render probable the guilt of the accused, but they must exclude every reasonable hypothesis than that of guilt.''

██ Then it is said that the court erred in not granting a special request concerning the law in words, as follows:

''I charge you that when a person is arrested he is said to be in custody, that a charge of an offense is made when a warrant is issued and signed by the proper issuing officer. When a person is arrested he is not yet charged until such time as a warrant is issued for his arrest.''

This more or less was discussed in what we have said above in reference to the trial court charging the jury that a warrant was not necessary. This special request was clearly unnecessary for the protection of anyone, and the trial judge properly refused to give this charge. The conviction of these plaintiffs in error in no way depended upon the giver of the bribe being charged with an offense. This question is not involved in this case. These men are charged with accepting this bribe, that is, the peace officer is charged with accepting the bribe and

the private citizen with aiding and abetting the peace officer in doing it. That is the crime that is here being tried.

The charge as a whole fairly covers everything necessary to be charged in this kind of lawsuit. The fact that this officer failed to perform his duty and make the charge of DWI against Mr. Moore, as was originally charged against him as shown by the facts, and reduced this to public drunkenness really has nothing to do with the lawsuit. The question is did they accept this money as a bribe to not do what their duty was. By the facts herein shown it is very clear that they did accept the bribe for this purpose. It is the accepting of the bribe with which they are charged here, and not the failure to do something else.

After carefully considering the matter, we feel that the judgment below unquestionably is just under the facts here presented and it must be affirmed.

### Opinion on Petition to Rehear

Since this matter was determined by us and announced on February 24, 1967, the plaintiffs in error have secured new counsel and through them a courteous and respectful petition to rehear has been filed.

There are two grounds set out in support of the petition, to-wit: (1) they again question the weight of the evidence, and (2) they insist that certain portions of the testimony were omitted from the bill of exceptions, and thus it is that they are entitled to a reversal and a new trial.

We have carefully read this petition to rehear with the exhibits thereto attached, and, after having

done so, the petition must be denied. In the first instance we dealt with the evidence in this case in our original opinion to such an extent as we thought necessary. It must be remembered that when a case comes to this Court we must apply the rule that the credibility of witnesses and conflicts in their testimony have all been settled by the verdict of the jury. This makes unnecessary and, indeed, inappropriate a detailed discussion of that evidence, pro and con, *Cooper v. State*, 123 Tenn. 37, 60-61, 138 S.W. 826, and we conclude that the material facts are established by that testimony.

In writing the original opinion, after having read the record, and heard the case argued by able counsel, we recognized that the case was largely based upon circumstantial evidence and we knew, of course, that the rule was well settled that the evidence must be consistent with the guilt of the defendants and inconsistent with their innocence, and sufficiently strong to overcome every other reasonable hypothesis except that of guilt. It was in this way that we approached the case before reaching our conclusion. A well recognized authority on criminal law, Wharton's Criminal Evidence, Vol. 3, sec. 977, at page 461, says:

"It is for the jury to determine the weight of evidence, the inferences to be drawn from the evidence, and the effect of impeaching evidence."

We have long recognized this rule and many authorities may be found by Shepardizing the *Cooper* case, supra. Circumstantial evidence may determine whether a person is guilty of taking or making a bribe. *People v. Sharp*, 107 N.Y. 427, 14 N.E. 319, 1 Am.St.Rep. 851, and others. We concluded in our original opinion that the evidence there and the inferences to be drawn therefrom

were sufficient to clearly establish our finding, and that this was especially true after the jury and trial judge had heard all the witnesses testify pro and con, had seen them, and things of the kind, and thus they were in far better position to determine who was detailing the truth than are we who saw only the transcript of the evidence. Our opinion is thus based upon what the jury concluded after having seen these witnesses and hearing them testify, and they were in a far better position to determine the matter than are we. There was ample evidence, including what we thought were logical inferences to be drawn therefrom, to support the conclusion of the jury.

The first ground of this petition to rehear is a reargument of what had been so forcefully argued heretofore. There is no material fact pointed out to us as having been overlooked and no new argument made to the merits. It is true that it is said that we overlooked certain things and certain inferences which would be drawn therefrom as viewed from the viewpoint of the plaintiffs in error, but it must be remembered that the jury did not accept their viewpoint and accepted the viewpoint of the State, which is well supported by the evidence. Such an argument must be overruled and denied under Rule 32 of this Court.

Many years ago this Court in *Louisville & N. R. Co. v. United States Fidelity & Guaranty Co.*, 125 Tenn. 658, 148 S.W. 671, said:

"* * * A petition for rehearing should never be used merely for the purpose of rearguing the case on points already considered and determined, unless some new and decisive authority has been discovered, which was overlooked by the court. The office of a petition to rehear is to call the attention of the court to matters

overlooked, not to those things which the counsel supposes were improperly decided after full consideration. 'During a pretty long period of judicial life,' said Mr. Justice Story, in *Jenkins v. Eldredge,* 3 Story, 299, Fed. Cas.No.7,267, 'it has been my misfortune on many occasions to have differed widely from counsel on one side or the other, in important causes, as to the merits thereof. But this, although a matter of regret, could not, as it ought not, in any, the slightest degree, influence the duties or judgment of the court. The asseverations of counsel, however solemn, have nothing to do with the facts or merits of causes before the court; and if any judge could be so unstable in his views, or so feeble in his judgment, as to yield to them, he would not only surrender his independence, but betray his duty. However humble may be his own talents, he is compelled to treat every opinion of counsel, however exalted, which is not founded in the law and the facts of the case to be voiceless and valueless. * * * They (rehearings) have been exceedingly rare in this court, I admit, as, in my judgment, they ought to be, unless some plain, obvious, and palpable error or omission, or mistake, in something material to the decree, is brought to the notice of the court, which has before escaped its attention. But if a rehearing were to be granted upon the mere certificate of counsel, who had argued the cause, that, in their judgment, the decree was erroneous (a certificate which, with great sincerity and readiness, would almost always be given by the counsel), it is obvious that in the great mass of equity causes of a difficult and important nature, in this court, depending upon conflicting views of law, and also upon conflicting and often irreconcilable evidence, a rehearing would be almost a matter of course; and, consider-

ing the vast time occupied hearing such causes, there would be little time left for the court to devote itself to any other business, and the other suitors in the court would suffer the most oppressive delays, and often the most irremediable injustice. * * * If rehearings are to be had until the counsel on both sides are satisfied, I fear that suits would become immortal, and the decision be postponed indefinitely.' "

Even though this statement by Mr. Justice Story was made in an equitable cause it is of greater value and meaning in a jury case when the appellate court has the record and passes on it after the jury does. This statement is therefore much more meaningful in the present case than it was in the case before Mr. Justice Story. For these reasons the first of the arguments on behalf of the petition to rehear must be overruled.

█ The other ground of the petition is based upon the fact that it is alleged that the bill of exceptions, which was presented to this Court, was not sufficient. It is said that the original defense counsel, whom we know to be an excellent criminal lawyer and a former distinguished District Attorney General, committed a great error as did the trial judge when they signed the bill of exceptions. It is now said by the petitioners that the bill of exceptions did not contain the correct proceedings of the trial, and it is argued that plaintiffs in error are more trustworthy in their recollection of the trial proceedings than were the original counsel, Attorney General and the trial judge. It is alleged that through no fault of plaintiffs in error they were denied the privilege of seeing the bill of exceptions. Their counsel, Mr. McInturff, approved this bill of exceptions, as was his duty. He didn't have to take it to his clients and have them go over it word for word.

If that was done it would be unnecessary to have a lawyer and no bill of exceptions would ever be completed.

 A rather unusual request was made to the trial judge in this present case at a time when he had no jurisdiction. This request was made more than thirty days after his overruling of a motion for a new trial in the case and after argument had been made before this Court on appeal. This request was that the trial judge allow them to hear tapes of the court reporter. We think the trial judge properly overruled such a request.

In *Baldwin v. State,* 204 Tenn. 639, 325 S.W.2d 244, this Court speaking through the late Mr. Chief Justice Neil made a statement therein which is applicable to the present argument. In that opinion it was said:

"Conceding that this argument of counsel is meritorious as applicable to the case at bar we are not privileged to make an exception to the general rule to which we have adhered to for many years. For us to do so would wreck the rule relating to appellate practice and procedure in that other exceptions would be insisted upon from time to time with the result that no record could be considered as complete in any case."

Thus it is, after having carefully considered this petition to rehear, the same must be overruled.