STATE of Tennessee, Petitioner,

v.

Fred D. MANNING, Respondent.

Supreme Court of Tennessee.

Feb. 5, 1973.

David M. Pack, Atty. Gen., State of Tennessee, Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, H. H. Winstead, Dist. Atty. Gen., Rogersville, Charles E. Fraley, Asst. Dist. Atty. Gen., Church Hill, for petitioner.

Dale Quillen, Nashville, S. J. Anderson, Morristown, for respondent.

## OPINION

CHATTIN, Justice.

Respondent was indicted in two cases for the sale of legend drugs in violation of T. C.A. Section 52–1204, and a third case for the possession of legend drugs in violation of T.C.A. Section 52–1206. He was found guilty in each of the three cases and sentenced to not less than one nor more than five years imprisonment and a fine of $1000.00 in each case. The trial judge ordered the sentences to run consecutively.

The Court of Criminal Appeals, by a split decision, dismissed the indictment for possession of legend drugs and reversed and remanded the other two convictions. We granted the State's petition for certiorari.

The conviction of the unlawful possession of legend drugs was dismissed on the ground the evidence relied on by the State was obtained by an unlawful search and seizure. In dismissing this conviction, the majority opinion states:

"By the officer's own testimony the defendant's automobile was stopped and the defendant arrested on general suspicion and nothing else. This rendered both the arrest and the subsequent search illegal. A warrantless arrest by a policeman must be based on probable cause when based on the commission of a felony, or an offense committed in his presence in the case of a misdemeanor."

**514**

However, the facts are Ed Trent and Joel Seals, members of the Morristown Police Department, were patroling a street in that city about four A. M., on the morning of January 13, 1971, when they observed a car traveling at a very slow rate of speed.

They had been ordered to stop cars using the streets during the late and early hours of the day which they deemed suspicious because recently many burglaries had occurred in the city during those hours.

The officers stopped the car and asked respondent if they could search his car and he replied in the affirmative; and, in fact, opened the trunk of the car himself.

An assortment of legend drugs was found in the interior of the car.

Respondent testified concerning the search. He stated he permitted the officers to search his car only at their direction. On cross examination, the following occurred:

"Q. Mr. Manning: You are familiar enough with the law to know that you have the right not to let the man search your car without a search warrant? Right?

"A. Well, if I want to I can.

"Q. You agreed to search the car? You knew you didn't have to let him search your car?

"A. Yes, sir."

In the case of Wilson v. Porter, 361 F. 2d 412 (9th Cir. 1966), the Court said:

"We take it as settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations. Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Busby v. United States, 296 F.2d 328 (9th Cir. 1961). A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement require that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."

Moreover, assuming the stopping of the car was an illegal arrest, there is no constitutional immunity from an unlawful arrest. The constitution only guarantees freedom from unreasonable searches and seizures. Satterfield v. State, 196 Tenn. 573, 269 S.W.2d 607 (1954); High v. State, 188 Tenn. 166, 217 S.W.2d 774 (1948). A permissive search by the owner is not an unlawful or unreasonable search. Deerfield v. State, 220 Tenn. 546, 420 S.W.2d 649 (1967).

Furthermore, respondent took the stand and testified he did did not know the pills were in his car.

"There are many cases in this jurisdiction and others which deal with the broad principle that if a defendant testifies in substance as to evidence which has been otherwise erroneously admitted, then his testimony clears whatever error there might have been. (Citing cases.) Thus, these cases clearly show that the rule is not limited to the situation where the defendant takes the stand and admits he committed the crime with which he was charged." Lester v. State, 216 Tenn. 615, 393 S.W.2d 288 (1965), certiorari denied 383 U.S. 952, 86 S.Ct. 1214, 16 L.Ed.2d 214.

Accordingly, it was error for the Court of Criminal Appeals to reverse the conviction and dismiss the indictment.

In reversing the two cases charging respondent with the unlawful sale of legend drugs, the Court of Criminal Appeals held respondent was denied a fair trial due to certain questions asked respondent and his mother on cross examination.

The majority opinion states:

"Although the guilt of the defendant of these two violations is clear, the convictions must be reversed because he was not afforded a fair trial."

The first instance relied on by the Court of Criminal Appeals occurred when the District Attorney General cross examined respondent, as follows:

"Q. Now have you bought any more pills in the last year? Legend drugs, other than the ones that's testified here?

"A. Like what?

"Q. Like amphedamin RJS, like viphemamin? 50 pills at Bullgap Stinson's Drug Store?

"A. I ----

"Q. You were there and you got 50 pills.

"A. I did not pay for no pills.

"Q. You didn't pay for them, you got them though. You went up there to get them on a forged prescription from Dr. Lynch.

"Mr. Quillen: Your Honor, I object.

"The Court: Sustained as to the forge. He may inquire of him if he got the pills at the drug store in Bullgap.

"Mr. Quillen: I move for a mistrial, if Your Honor, please, it is so prejudicial and so unfair.

"The Court: Your motion for a mistrial is denied, Mr. Quillen.

"Mr. Quillen: Note an exception.

"Q. I will ask you, Mr. Manning, if on Saturday, May 16, 1970, at four thirty P. M., if you did not appear in Stinson's Drug Store in Bullgap, Hawkins County, Tennessee, and ask for 55 oberdrem capsules on a prescription of Dr. Lynch?

"A. I went in there but I didn't ask for no 50 pills.

"Q. You received a bag?

"A. No, sir. I did not have it in my hand.

"Q. You didn't have it in your hand? Dr. Stinson had it in his hand?

"A. Yes.

"Q. And that's when you were arrested?

"Mr. Quillen: I object. If the Court please, and move that it be stricken from the record.

"The Court: Sustained as to the arrest."

In the case of State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460 (1962), it is said:

"While proof of other independent crimes, not relevant to any issue on trial, is inadmissible, yet when a defendant takes the stand as a witness for himself, he is subject to cross-examination like any other witness; and for the purpose of affecting his credibility, he may be asked as to specific acts which involve moral turpitude or any other misconduct which tends to show his lack of veracity or untrustworthiness.

"The trial judge has a wide latitude and a large discretion in the control of cross-examination of witnesses; and his exercise of such discretion will not be interfered with except in case of plain abuse of it."

We are of the opinion the trial judge did not abuse his discretion in the action he took in this instance.

Moreover, if it could be said it was error, it was at best harmless. T.C.A. Section 27–117.

■ The second instance relied on by the Court of Criminal Appeals for holding the trial was unfair occurred while Mrs. Shiflet, the mother of respondent, was being cross examined by the District Attorney General.

Mrs. Shiflet testified as to respondent's poor health and as to his ability to work. She stated:

"Not long at a time. He was at Berkline a while and then he would get so he couldn't work."

On cross examination, the following occurred:

"Q. Mrs. Shiflet, Dean Manning has been able to bootleg most of his life, hasn't he?

"Mr. Quillen: I am going to object to that, if the Court please. I move for a mistrial because of it.

"The Court: He may ask her what his occupation is. He can rephrase it."

No further reference was made as to whether he had bootlegged or not. The trial judge sustained the objection. Respondent is in no position to complain. Moreover, if error, it was harmless.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is affirmed.

DYER, C. J., HUMPHREYS and McCANLESS, JJ., and WILSON, Special Justice, concur.