Jerome **WILLIAMS**, Plaintiff in Error,

v.

**STATE** of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Nov. 21, 1973.

Certiorari Denied by Supreme Court

Jan. 21, 1974.

Douglas A. Meyer, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Lawrence Young and David Rotroff, Asst. Dist. Attys. Gen., Chattanooga, for defendant in error.

## OPINION

OLIVER, Judge.

Now indigent and represented here by an appointed attorney who represented him as retained counsel in his trial, Williams has perfected an appeal in the nature of a writ of error to this Court contesting his Hamilton County Criminal Court conviction of possessing heroin for the purpose of resale, for which he was sentenced to not less than five nor more than 10 years in the penitentiary.

Although the defendant does not challenge the sufficiency of the evidence, a summary of its essential substance will facilitate understanding of the case.

On March 7, 1972 Chattanooga Policeman Dewey Gass received information from an insurance salesman that suspicious activity was occurring in an adjacent motel room and that a gray Buick Riviera with a black top appeared to be involved. Gass got the license number of that car from the motel clerk, and then, consulting records in the Police Information Center, he found that license number to be registered to a Thunderbird owned by the defendant, whom the officer knew and regarded as being a shady character.

Later the same night, the informant contacted Officer Gass and told him the owner of the suspected vehicle was checking out of the motel. On the way to investigate, Gass saw the suspected vehicle but since he was in an unmarked car he radioed the police dispatcher to have the car stopped by Officer Walden, whom he passed earlier, for violating the State motor vehicle registration law. Gass kept the car in sight and pulled up behind it as Walden stopped it. It was raining at the time.

As the defendant got out of the car and handed Officer Walden his driver's license, the door on the opposite side of his car opened and a small green paper bag was thrown out. Gass saw this and picked up the bag. It contained a small envelope containing 88 capsules of heroin. The bag also contained a marijuana cigarette and two one-dollar bills. After the defendant consented to a search of his car, one capsule of heroin was found on the floor behind the front seat and $314 in cash in the trunk.

Curtis McDonald, who was in the car with the defendant and was also charged with possession of heroin with intent to sell it, testified that when the police stopped the defendant's car the defendant placed the bag containing the heroin in between the bucket seats, got out of the car stating that he could handle it, and started walking to the officers; that when the officers threw the defendant across the car he hollered to him (McDonald) and Lebron Smith, another passenger, to "clean up"; and that Smith opened the car door and had him (McDonald) throw the bag out.

Lebron Smith testified that when the police stopped the car, the defendant got out, but seeing all the policemen, walked back to the car and said, "Clean up," meaning to throw the drugs out of the car, and that he opened the car door and McDonald threw the drugs out.

Both McDonald and Smith were called as defense witnesses in the hearing on defendant's motion to suppress the heroin as evidence, and both testified as prosecution witnesses before the jury. They plea-bargained their cases.

Only the heroin capsules and the small envelope and the paper bag were offered and admitted in evidence.

The defendant testified that he had no heroin and did not know any was in his car. The jury did not believe that.

■ By his first Assignment of Error the defendant attacks the constitutionality of T.C.A. § 52–1432(a)(2), which provides:

"It may be inferred from the amount of controlled substances possessed by an offender, along with other relevant facts

surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of controlled substances that the controlled substances so exchanged were possessed not with the purpose of selling or otherwise dispensing them in violation of the provisions of subsection (a) of this section. Such inferences shall be transmitted to the jury by the trial judge's charge and the jury will consider such inferences along with the nature of the substance possessed when affixing the penalty."

In his instructions to the jury, the trial judge quoted all of that statute except the last sentence.

The defendant cites Sharp v. Commonwealth, 213 Va. 269, 192 S.E.2d 217 in support of his contention that this statute is void because it is unconstitutionally vague and uncertain, in that it does not state what quantity is sufficient to raise an inference of intent to sell and that there is no sufficient rational connection between the possession of a quantity of the drugs and the inference that it is possessed for the purpose of resale.

The subsidiary provision of the Virginia statute (1950 Virginia Code, as amended, § 54-524.101(a)), struck down by the Court in Sharp v. Commonwealth, provided: "A conviction for a violation of this § 54-524.-101(a) may be based solely upon evidence as to the quantity of any controlled drug or drugs unlawfully possessed." In that case the court instructed the jury:

" 'The Court instructs the jury that a conviction of possession of marijuana with intent to distribute may be based *solely* upon evidence as to the quantity of such marijuana unlawfully possessed.' (Emphasis added.)"

Thus, it is readily apparent that the Virginia statute which the Supreme Court of that State held to be unconstitutionally offensive differed radically and critically from the above-quoted provision of this State's drug control statute. Our statute does not contain the rigidly restrictive language found in the Virginia statute, but leaves the inferences to the jury, upon consideration of the amount of controlled substance possessed by the accused and the other facts and circumstances shown in the proof. Plainly, Sharp v. Commonwealth, supra, is inapposite and does not sustain the defendant's assault upon the constitutionality of the statute in question.

■ Upon this record the jury was fully justified in finding that the 88 capsules of heroin thrown out of the defendant's car upon his instruction (1) belonged to him and (2) that he had them for sale. The possession of a large quantity of narcotics, together with the defendant's conduct and the facts and circumstances surrounding the finding of the drugs and his arrest, warrants an inference that distribution was intended. United States v. Johnson, 469 F.2d 973 (5th Cir. 1972).

■ The defendant's next Assignment is that the trial court erred in admitting the capsules of heroin in evidence, the contention being that the officers obtained them as a result of illegally stopping and arresting the defendant.

As noted above, Police Officer Gass said he found from police records that the license plates on the Buick operated by the defendant had been issued to a Thunderbird registered in his name. Unlawfully displaying or using a license plate on a motor vehicle other than the one for which it was issued is a misdemeanor. T.C.A. § 59-516. On his way to the motel Officer Gass met the Buick, and, because he was in an unmarked car he called the police dispatcher on his walkie-talkie to have Officer Walden stop the car. Gass then turned and followed the Buick and was in sight of it when Officer Walden pulled in behind it and arrived at the scene just as Walden pulled the defendant over.

The first question raised under this Assignment is whether the defendant was committing an offense in the presence of either or both of the officers when he was stopped and arrested. Officer Walden knew only what the police dispatcher relayed to him after Gass radioed for help. Under the law the defendant's offense, if any, was not committed in Walden's presence and his stopping the defendant was, therefore, illegal.

■ Obviously, Officer Gass' conclusion that the defendant was committing a misdemeanor resulted from his assumption, based solely on second-hand information obtained from police records, that he was illegally using on his Buick license plates issued to a Thunderbird he owned. Defense counsel suggests that the defendant could have traded cars and had his license plates legally transferred to the Buick. T.C.A. § 59–401. The defendant did not testify or present any evidence that he made such a transfer. But the absence of such proof can neither alter or avoid the fact that Officer Gass' information was pure hearsay and, as he testified, he had no personal knowledge whether the defendant had legally transferred his license from the Thunderbird to the Buick, and hence did not know that the defendant's use of the license plates on the Buick was unlawful and that he was committing a misdemeanor.

Two other officers present at the arrest had information that the defendant was selling heroin, a felony. T.C.A. § 52–1432(a)(1)(A). But those officers arrived at the scene after the arrest, so that, obviously, the defendant was not arrested because of their information that he had committed a felony.

■ A crime is committed in an officer's presence when he is apprised thereof by the exercise of one or more of his five senses, and when he thus acquires direct personal knowledge of a criminal act he may lawfully arrest the person committing it. Nelson v. State, 219 Tenn. 680, 690,

413 S.W.2d 358. And an offense is not committed in the presence of an officer when its commission is communicated to him by another. Hurd v. State, 119 Tenn. 583, 108 S.W. 1064. See also: Hughes v. State, 145 Tenn. 544, 571, 238 S.W. 588; 5 Am.Jur.2d, Arrest § 31.

■ However, notwithstanding all the foregoing, disposition of the defendant's Assignment complaining about admission in evidence of the heroin thrown out of his car by his associates requires us to consider whether its acquisition by the officers involved an unconstitutional search and seizure. We do not believe it did. After the defendant's associates threw the package of heroin out of the defendant's car at his direction, it was simply picked up out of the mud by Officer Gass. Patently no search was involved. Nor is the "plain view" doctrine or abandoned property involved. The case is no different than if the officers had found this automobile parked on the side of the road and had pulled up behind it and had seen a package thrown out of it. In such circumstances certainly it could not be said that by picking up the package the officers searched either the driver or his automobile. Therefore, picking up the heroin in this case and its admission in evidence at the defendant's trial did not in any way trench upon his constitutional protection from unreasonable searches and seizures guaranteed by Article I, Section 7 of the Constitution of Tennessee and the Fourth Amendment to the Constitution of the United States.

Moreover, as noted, the defendant testified he did not know the heroin was in his car. In State v. Manning, Tenn., 490 S.W.2d 512, our Supreme Court said:

"Furthermore, respondent took the stand and testified he did not know the pills were in his car.

'There are many cases in this jurisdiction and others which deal with the broad principle that if a defendant testifies in substance as to evidence

which has been otherwise erroneously admitted, then his testimony clears whatever error there might have been. (Citing cases.) Thus, these cases clearly show that the rule is not limited to the situation where the defendant takes the stand and admits he committed the crime with which he was charged.' Lester v. State, 216 Tenn. 615, 393 S.W.2d 288 (1965), certiorari denied 383 U.S. 952, 86 S.Ct. 1214, 16 L.Ed.2d 214."

Finally, there is no substance in the defendant's contention the court erred in ordering his sentence in this case to be served consecutive to his earlier sentences, arguing that under T.C.A. § 40–2710 the maximum time of imprisonment for all separate offenses to be served consecutively cannot exceed his maximum term in the present case. With reference to sentences to be served consecutively, the statute expressly provides that the total term of imprisonment cannot exceed "the *total* of the maximum *terms* provided by law for such *offenses*."

Affirmed.

WALKER, P. J., and DWYER, J., concur.

DWYER, Judge (concurring).

I agree with my brethren in the results they reach in affirming this conviction. I agree in all respects with their rejection of the contention that the search was unreasonable. However, I must respectfully differ with the reasoning which leads to this conclusion. I feel that when the officer received information from the dispatcher about the faulty registration he then had the right to have the car stopped and make inquiry. See Adams, Warden v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, decided June 12, 1972; State v. Manning, Tenn., 490 S.W.2d 512, 514; High v. State, 188 Tenn. 166, 168, 217 S.W.2d 774, 775. While the first two cited authorities involve cases in which inquiry was made into the suspected commission of felonies, the Tennessee Supreme Court in the *High* case, supra, decided that police officers could and should, in some cases, make inquiry into the suspected commission of misdemeanors.

I am further not satisfied that this arrest was contrary to T.C.A. § 40–803(1). In the light of modern day law enforcement, reliance, as here by the officer, on the dispatcher information that the registration was faulty, may have been of such sufficiency so as to apprise the officer that a misdemeanor was being committed in his presence. In fact, if the registration was unlawful then it was a misdemeanor being committed in his presence. See T.C.A. § 59–516. I think that the officer's action in stopping the automobile was with authority, or with at least color of authority as cited, to render his action a reasonable one as opposed to an arbitrary harassment.

It is for this reason alone that I concur in the result reached by the majority. Since I find that the arrest or stopping was valid, I have no inhibitions in determining that the evidence in question was admissible. However, I must differ in the reasoning employed by the majority in reaching its conclusion. As I understand it, the majority holds that even though the arrest was invalid, the heroin which would not have been seized but for the bad arrest, is in no way tainted thereby. I find it contrary to law to allow evidence to go before a jury which was obtained as a direct result of an unlawful arrest. See Hughes v. State, 145 Tenn. 544, 238 S.W. 588.

To further illustrate my point let me say that I am firmly of the opinion that our citizenry has the unalienable right to traverse our streets and highways free from arbitrary intrusions by government agents. It is completely contrary to my beliefs to say that we have a constitutional right from unreasonable searches and seizures and then to say that this only applies to the home, car, etc. The plain wording of the Fourth Amendment belies this construction: ". . . to be secure in their

*persons,* houses, etc. . . ." It therefore is contrary to my logic to state that as a free citizen I cannot be secure in my person from arrest in view of the plain language contained in Article I, Section 7 of the Constitution of Tennessee and the Fourth Amendment to the Constitution of the United States. In Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746, the following language may be found, construing the Fourth and Fifth Amendments of the United States Constitution:

". . . they apply to all invasions on the part of the government and its employes of the sanctity of a man's home *and the privacies of life.* It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; *but it is the invasion of his indefeasible right of personal security,* personal liberty and private property, *where that right has never been forfeited by his conviction of some public offense,*—it is the invasion of this sacred right which underlies and constitutes the essence of *Lord* Camden's judgment." (Emphasis added.)

\* \* \* \* \* \*

". . . but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions *for the security of person and property should be liberally construed.* A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis.*" (Emphasis added.)

In reiteration, it is clear then that as a citizen, and in the absence of forfeiture of my guarantees by me through the commission of an unlawful act, I should enjoy the freedom to be able to traverse by foot or otherwise the countryside free from intrusions without cause by government agents. I have, as I construe the constitutions of the United States and of Tennessee, as much right to be free from undue governmental interference on the open road as I do to sit, unmolested, by the fireplace in my home, reading the evening newspaper. I am therefore compelled to the conclusion that I do have a constitutional right to be free from an unlawful arrest under the amendments. See Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676. It is completely against logic, that, in a country born out of oppression, it can be said that these constitutional guarantees apply only to a search and things seized as a result of that search and yet, in the same breath, have it said that the government is not to be hobbled in its efforts to tread upon the personal security of the people. We must always keep a proper balance between the two, society and its rights as opposed to the individual and his rights. As stated in Hughes v. State, supra, at p. 573 of 145 Tenn., at p. 596 of 238 S.W.:

"'Two great and vital principles of government are to be kept steadily in view, in pronouncing on conduct, such as is brought to view in this record—the *liberty of a citizen, and the peace and repose of society.* Civil liberty is natural liberty, shorn of the excesses which invade and trench on the equal liberty of others. No one can claim the right to violate the law, and precautionary force is justified, to prevent a greater impending evil. Such force, however, is in its nature remedial, and can be carried no further than is reasonably necessary to prevent the threatened wrong. Prevention is less hurtful than redress, and, when prudently exercised, is not only justified, but is commended of the law. No man can rightfully complain of any encroachment *upon personal liberty, which he himself by his lawlessness or violence has rendered necessary for the safety and protection of others.* It is liberty as defined

by law, not unbridled license, our free Constitution guarantees to every man— the humblest, equally with the most exalted.' Hayes v. Mitchell, 69 Ala. [452], 454." (Emphasis added.)

If, as the majority holds, the arrest was bad, even though there was no search as such, then it tainted the recovery of the heroin, rendering it inadmissible as evidence. However, as related I am satisfied that the officers' stopping of the car was not conducted in an arbitrary manner or for harassment purposes. It was the legality of the arrest or reasonable stopping for inquiry, see High v. State, supra, which accounts for the untainted character of the evidence in question. In my opinion, as stated in Hughes v. State, supra, arrest good, search good.

Finally, many times I have concurred or quoted the *broad principle* enunciated in State v. Manning, Tenn., 490 S.W.2d 512, concerning defendant's ability to testify during trial as to evidence which he sought to exclude from the jury in a motion to suppress. Our law stands for the proposition that should the defendant make any statements on the stand concerning such evidence, he thereby cures the search question, raised in the motion to suppress, and waives his right to appeal on the question. In the instant case, the trial judge overruled the defendant's motion that the heroin should be held inadmissible as the fruit of an invalid arrest. Since he later took the stand and testified that he had no knowledge of the presence of heroin in the car, it is said that he has waived his right to question the search. As a member of an intermediate court I am bound by the decision of our Supreme Court. However, with the utmost respect for their wisdom I respectfully disagree with the search principle expounded in State v. Manning, supra. I think that a person has the right to assert the issue of the constitutionality of a search under the Fourth Amendment and, that if the ruling is against his claim, to except to that ruling. One should not then be placed on the horns of a dilemma by a principle which stands for the proposition that if one does testify he will lose his right to question the search on appeal. In other words, to support this principle to me clearly puts a chilling effect on one's constitutional guarantees. In closing, if a search question is raised, and it is determined against the party so raising it, he should not lose the right to challenge that question in the appellate court merely because he chose to testify on the trial level.

With these expressions, as related at the outset, I concur in affirming this judgment because, as stated, I feel: (1) that the car was not arbitrarily stopped; and (2) that the throwing of the heroin therefrom was not a search, as such.