IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2008

**STATE OF TENNESSEE V. GLENN EUGENE ARMES**

**Appeal from the Criminal Court for Roane County**
**No. 13091     E. Eugene Eblen,  Judge**

---

**No. E2007-00016-CCA-R3-CD - Filed July 17, 2009**

---

Defendant, Glenn Eugene Armes, presents for review a certified question of law pursuant to
Tennessee Rule of Criminal Procedure 37(b)(2).  Defendant entered a plea of guilty to arson and
simple possession of a controlled substance.  The trial court sentenced Defendant to nine years for
arson and eleven months and twenty-nine days for simple possession to be served consecutively.
As a condition of his guilty plea, Defendant properly reserved a certified question of law as to
whether he was subjected to an unconstitutional traffic stop.  After a review of the record, we affirm
the judgments of the trial court.

**Tenn.R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JERRY L. SMITH, and JOHN
EVERETT WILLIAMS, JJ., joined.

Michael W. Ritter, Oak Ridge, Tennessee, for the appellant, Glenn Eugene Armes.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General;
Russell Johnson, District Attorney General; Scott McCluen, Assistant District Attorney General; and
Frank Harvey, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

On December 31, 2004, Deputy Randy Scarborough, Jr. of the Roane County Sheriff's Office
was working security at the Midtown Elementary School for a church that was having a children's
New Year's Eve party.  Around 6:00 or 7:00 p.m., Defendant, Glenn Eugene Armes, drove into the
school parking lot and knocked over a temporary sign.  Deputy Scarborough talked to Defendant,
who indicated that he did not see the sign.  Defendant set the sign back in place, and the church
members declined to press any charges.

Around 1:00 a.m. on January 1, 2005, Deputy Scarborough went to the end of the driveway to direct traffic for those leaving the party. He saw Defendant quickly drive by. Deputy Scarborough testified that he believed Defendant to be speeding, and although he was unable to verify such with a radar unit, Scarborough pulled Defendant over. During the stop, Deputy Scarborough noticed that Defendant had a cut on his thumb. Defendant indicated that he received the cut while working on his car. He also said that he was going to Scot's Market to get a bandage. Deputy Scarborough then warned Defendant to slow down.

Several minutes later, Deputy Scarborough received a dispatch that the Scarborough Memorial Free Methodist Church on Poland Hollow Road, located approximately one-half mile away, was on fire. Scarborough got into his vehicle and drove to the church. When he arrived, the front door of the church was open and there appeared to be a boot print on the door. Deputy Scarborough then drove to the side of the church and saw that the side door was open and dented. Three windows in the sanctuary had also been broken. Deputy Scarborough tried to crawl into the church to extinguish the fire by stomping on it; however, it was too hot, and he backed out. His training as a volunteer firefighter and in arson detection led him to believe that the fire was intentionally set because the doors were open and windows were broken in order to increase ventilation. At that point, Deputy Scarborough began looking for Defendant. He knew Defendant from their involvement in firefighting. At the time, Defendant was a firefighter with the Kingston Fire Department, and Deputy Scarborough was aware that Defendant had pending charges for three counts of arson.

Since Defendant had told Deputy Scarborough that he was going to Scot's Market to get a bandage, Scarborough drove there to find Defendant. Defendant's red Chevrolet Lumina was not at the market, and the store clerk said that she had not seen a vehicle matching that description. Deputy Scarborough left the market and drove to Defendant's house, but he did not see Defendant or his vehicle. Deputy Scarborough then drove back to the church and noticed Defendant sitting in his car parked approximately four or five car lengths behind another police cruiser. Based on his training, Deputy Scarborough was aware that arsonists like to go back to the scene of the crime to watch the fire they set. He attempted to get Defendant's attention by shining a flashlight into his eyes. At that point, Defendant looked down, put his car in reverse, and backed into someone's driveway. He kept his head down, put his car in drive, and pulled out. Deputy Scarborough and Officer Jared Whitson of the Harriman Police Department pulled out behind Defendant and stopped him. They had turned on their lights and sirens before stopping him. Defendant was handcuffed and eventually taken to the Roane County Jail for questioning. Deputy Scarborough inventoried Defendant's car and found a bag of leafy green substance, rolling papers, and a lighter. At the jail, Defendant was Mirandized by Investigator Jon French, and he gave a statement admitting that he set the fire.

The trial court entered an order denying Defendant's motion to suppress the marijuana and his statement to law enforcement, finding that "there was a reasonable basis for the initial stop of defendant and subsequent detention, there being articulable facts and circumstances for the Officer[']s actions."

**II. Analysis**

On appeal, Defendant argues that the trial court erred by denying his motion to suppress evidence obtained as the result of an illegal stop. The State argues, initially, that Defendant's appeal should be dismissed because the Notice of Appeal was untimely filed. According to Rule 4(a) of the Tennessee Rules of Appellate Procedure, a notice of appeal must be filed within thirty days of the judgment from which the appeal is taken. Defendant was sentenced and judgment was entered on October 4, 2006, and he filed a notice of appeal on December 22, 2006. Although Defendant's notice of appeal was, in fact, untimely filed, in the interest of justice, we waive the timely filing of a notice of appeal and will therefore consider the merits of Defendant's argument. See Tenn. R. App. P. 4(a); see also Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998).

When a decision on a motion to suppress is challenged, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. See State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). "'Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" State v. Lawrence, 154 S.W.3d 71, 75 (Tenn.2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). However, appellate review of a trial court's conclusions of law and application of law to facts on a motion to suppress evidence is a de novo review. See State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006); State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).

Both the state and federal constitutions expressly protect individuals from unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, 7. These constitutional provisions are designed "'to prevent arbitrary and oppressive interference with the privacy and personal security of individuals.'" Daniel, 12 S.W.3d at 424 (quoting INS v. Delgado, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762, 80 L. Ed. 2d 247 (1984)). It is the duty of courts to be mindful of the constitutional protections afforded to the individual citizen and guard against any stealthy encroachments thereon. Williams v. State, 506 S.W.2d 193, 199 (Tenn. Crim. App. 1973). As such, a warrantless seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Nicholson, 188 S.W.3d at 656; see also State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

One such exception is an investigatory stop by a law enforcement officer if the officer has a reasonable suspicion, based upon specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 884 (1968); Binette, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. See United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2574, 2580, 45 L. Ed. 2d 608 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether a police officer has a reasonable suspicion, supported by specific and articulable facts, a court must consider the totality of the circumstances. Binette, 33 S.W.3d at 218. Those circumstances may include the personal observations of the police officer, information

-3-

obtained from other officers and agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294. Additionally, the court must consider any rational inferences and deductions that a trained officer may draw from those circumstances. Id. Objective standards apply rather than the subjective beliefs of the officers making the stop. State v. Norwood, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). Other factors that may determine the existence of reasonable suspicion include the characteristics of the area, the behavior of the driver, and the aspects of the vehicle itself. Hughes v. State, 588 S.W.2d 296, 305-06 (Tenn. 1979); State v. Lawson, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996).

In this case, the trial court found that the officer did articulate a reasonable suspicion for stopping Defendant, and the evidence supports the court's findings. Deputy Scarborough stopped Defendant for speeding and noticed that his finger was cut. Defendant told Deputy Scarborough that he cut his thumb while working on a car and that he was going to Scot's Market to buy a bandage. Deputy Scarborough then warned Defendant to slow down. Around two or three minutes later, Deputy Scarborough received a dispatch that a church, located approximately one-half mile away, was on fire. When Scarborough arrived on the scene, he noticed that door of the church had been kicked in, and the windows had been broken out. His training as a volunteer firefighter and in arson detection led him to believe that the fire was intentionally set. Deputy Scarborough was aware that Defendant had three pending arson charges. Based on his knowledge of the charges, the broken glass at the church, and the cut on Defendant's thumb, he began looking for Defendant. He drove to Scot's Market and learned Defendant had not been there to purchase a bandage. When he arrived back at the scene of the fire, he saw Defendant sitting in his car watching the fire. Based on his training, Deputy Scarborough was aware that arsonists like to go back to the scene of the crime to watch the fires they set. He attempted to get Defendant's attention by shining a flashlight into his eyes. At that point, Defendant looked down, put his car in reverse, and backed into someone's driveway. He kept his head down, put his car in drive, and pulled out.

Based on the foregoing, we conclude that deputy Scarborough had reasonable suspicion supported by specific and articulable facts to conduct an investigatory stop, and the trial court did not err in denying Defendant's motion to suppress. Defendant is not entitled to relief on this issue.

_____
THOMAS T. WOODALL, JUDGE