STATE of Tennessee, Appellee,

v.

David E. RHYMER, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 11, 1995.

Robert C. Newton and Stephen Wallace, Office of Public Defender, Blountville, and Randall E. Reagan, Knoxville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Michael J. Fahey, II, Assistant Attorney General, Nashville, and Edward E. Wilson, Asst. District Attorney General, Blountville, for Appellee.

## OPINION

JOHN A. TURNBULL, Special Judge.

The defendant pled guilty to charges of third offense of driving under the influence of an intoxicant, and second offense of driving on a revoked license, and reserved the right to appeal a certified question of law. The sentence was appropriate and is not questioned.

The issue preserved for appeal is:

"Whether a police officer can legally make a warrantless stop pursuant to T.C.A. 40–7–103(1) for a misdemeanor based upon a motor vehicle record showing the registration of the defendant's vehicle was issued to another vehicle."

More appropriately stated the issue before the court is: Whether N.C.I.C. computer reports may be relied upon by officers in formulating a basis for reasonable suspicion necessary to perform an investigatory stop.

We answer the issue in the affirmative and affirm the trial court in overruling the motion to suppress.

## FACTS

On October 17, 1992 at approximately 12:30 a.m., Officer Breuer, of the Bristol Police Department, was following defendant who was driving a primer gray Volkswagen "bug". Officer Breuer noticed there were marks on the license plate from bolts or screws indicating to the officer that the plate had been bolted differently, on another vehicle, at some point in time. Not content to rely on the "bug's" registration as authentic, Officer Breuer called in the license plate number to the dispatcher who advised Officer Breuer that according to the N.C.I.C. computer, the license plate was registered to a 1978 brown, two-door Chevrolet. Officer Breuer activated his blue lights, and defendant pulled his vehicle to the left side of the road, hit the curb, and came to a stop in the parking lane facing the wrong way.

Officer Breuer approached the vehicle and detected an odor of alcohol. The defendant performed three field sobriety tests requested by the officer, was judged to be under the influence, and arrested. A further check through the N.C.I.C. computer revealed defendant's drivers license had been revoked. Defendant submitted to an intoximeter 3000 breath test which revealed a blood alcohol content of .14 percent.

At the suppression hearing it was proven that the vehicle registration was proper, having been transferred from a 1978 Chevrolet to the 1967 Volkswagen on October 13, 1992. The N.C.I.C. computer information relied upon by the officer in making the stop was wrong.

Defendant contends that the warrantless stop for a misdemeanor was in violation of the Fourth Amendment and amounted to an unreasonable seizure. He further argues that T.C.A. 40–7–103(a)(1) authorizes an officer to make a warrantless arrest for a misdemeanor only if the offense is committed in his presence.

## LAW

Every official restraint upon the liberty of a person, even a brief detention, is subject to the strictures of the Fourth Amendment of the United States Constitution and, in this State, of Article I, Section 7 of the Constitution of Tennessee. An investigatory stop, as here, must be based on reasonable suspicion, supported by specific and articulable facts or inferences from facts that a criminal offense has been or is about to be committed. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *Griffin v. State,* 604 S.W.2d 40, 42 (Tenn. 1980). In considering the totality of circumstances, the court may consider, among other things, the officer's objective observations and information obtained from other police officers or agencies. *State v. Watkins,* 827 S.W.2d 293, 294 (Tenn.1992). As held recently by this Court:

> An officer is not required to have proof of an unequivocal nature that criminal conduct is about to, or has occurred. We feel the question is not whether the activity may be consistent with innocent activity; rather, we view the test as whether there are facts that make the conduct reasonably suspicious of past or future criminal conduct. *State v. Scarlett,* 880 S.W.2d 707, 709 (Tenn.Crim.App.1993).

Thus the question is whether the physical appearance of the license plate, coupled with the information (albeit erroneous) the officer received from the N.C.I.C., provided the officer with enough information to formulate a reasonable suspicion of criminal conduct, i.e., violation of T.C.A. 55–5–115, improper registration, a Class C misdemeanor.

## CAN N.C.I.C. INFORMATION BE RELIED UPON BY AN OFFICER IN MAKING AN INVESTIGATORY STOP?

Defendant insists that this case is controlled by *Williams v. State,* 506 S.W.2d 193 (Tenn.Crim.App.1973). In *Williams,* as

in this case, the stop of a vehicle was based on a report from a dispatcher relaying information from the "Police Information Center" that the license plate on the vehicle was not registered to that vehicle. The *Williams* court called such information "pure hearsay" and, under the more complex facts in that case, held such second-hand information insufficient to support *probable cause for arrest* so as to validate a warrantless search incident to that arrest.

Here the issue is reasonable suspicion for an investigatory stop, not, as in *Williams,* probable cause for arrest. In this case, the information was received via N.C.I.C. computer, not, as in *Williams,* from the "Police Information Center." Here, during the process of the stop and prior to arrest defendant crossed the road, hit the curb while attempting to park in a parking lane facing the wrong way, smelled of alcohol, and failed field sobriety tests all before being placed under arrest. *Williams* is not controlling. The distinction is manifest.

Defendant cites *State v. Buck,* 670 S.W.2d 600 (Tenn.1984) and *State v. Philpott,* 882 S.W.2d 394 (Tenn.Crim.App.1994) to support the proposition that information from N.C.I.C. computer reports is so unreliable that such information should not supply a basis for even an investigatory stop. However, in *Buck* the question was not whether N.C.I.C. reports could be relied upon by an officer in making an investigatory stop but instead whether they were admissible in evidence to prove the truth of the facts contained in the report. *Buck, supra,* at p. 607. Here, the N.C.I.C. report is not being utilized to prove the truth of the facts contained in the report but instead to show the state of mind of the officer and to test whether he had reasonable suspicion based upon specific and articulable facts or reasonable inferences drawn from such facts. See T.R.E. 801(c) and T.R.E. 803(3).

In *Philpott, supra,* this court held that an N.C.I.C. printout does not provide a good-faith basis for impeachment of a crucial defense witness when the trial court had previously held that the witness's only conviction, a misdemeanor, was inadmissible. *State v. Philpott, Id.* at 403. Although N.C.I.C. re-

ports may be of a "dubious degree of accuracy" for the purpose of proving the truth of the facts contained in the report when not the best evidence of these facts, it cannot be denied that police departments across the nation find N.C.I.C. reports invaluable in locating offenders and enforcing the law. *Philpott* and *Buck* fall far short of holding that N.C.I.C. reports may not be used by officers in formulating a basis for reasonable suspicion necessary to perform an investigatory stop.

Indeed, both Tennessee and federal courts have held N.C.I.C. reports sufficiently reliable to support *probable cause* for arrest. *U.S. v. Davis,* 568 F.2d 514 (6th Cir.1978); *U.S. v. Williams,* 440 F.2d 1235 (6th Cir. 1971); *U.S. v. McDonald,* 606 F.2d 552 (5th Cir.1979); *State v. Hedges,* Green County, CCA No. 252, 1987 WL 9535, opinion filed April 15, 1987, at Knoxville.

In *U.S. v. Davis, Id,* the testimony of an F.B.I. agent that he had determined two pieces of farm equipment to be stolen property by running the serial numbers through N.C.I.C. was held to be sufficient to establish probable cause for the arrest of one possessing the farm equipment. *Id.,* at 516. In *U.S. v. Williams, supra,* the Sixth Circuit again upheld an arrest founded upon an N.C.I.C. computer check confirming that a vehicle was stolen property. The Fifth Circuit Court of Appeals in *U.S. v. McDonald, supra,* relying on *U.S. v. Davis, supra,* held as follows:

> While N.C.I.C. printouts are not alone sufficient evidence to permit conviction, the cases uniformly recognize that N.C.I.C. printouts are reliable enough to form the basis of the *reasonable belief* which is needed to establish *probable cause* for arrest. *McDonald,* 606 F.2d at 553–554 (emphasis added).

In the case before us, it was not necessary for Officer Breuer to have information sufficiently reliable to form a *reasonable belief* needed to establish *probable cause* for arrest. It was only necessary that he have information sufficiently reliable to raise a reasonable suspicion, a lower standard. To hold that police officers could not rely on N.C.I.C. information in forming reasonable suspicion

for an investigatory stop would have the effect of unnecessarily tying the hands of officers in countless situations. The intrusion is slight, the need great.

The physical appearance of the license plate itself, coupled with the information Officer Breuer received from N.C.I.C., provided the officer with enough sufficiently reliable information to formulate a reasonable suspicion of criminal conduct.

### DOES THE FACT THAT THE N.C.I.C. INFORMATION WAS WRONG INVALIDATE THE STOP?

 Defendant contends that since the N.C.I.C. vehicle registration information relied upon by Officer Breuer turned out to be incorrect, the unreliability of such information in this instance is absolutely proven and cannot be used as a basis for reasonable suspicion. Such a contention was likewise made in *Commonwealth v. Riley,* 284 Pa.Super. 280, 425 A.2d 813 (1981), a case from the Superior Court of Pennsylvania. In *Riley,* a Philadelphia police officer, in response to a disorderly crowd complaint, approached defendant. Defendant's identification was checked through N.C.I.C., and information from the check received by the officer indicated an outstanding arrest warrant and juvenile detainer. After defendant was arrested and transported to the police station, it was determined that defendant fit the description of a robbery suspect. He was convicted of the robbery.

In *Riley,* too, the N.C.I.C. information was inaccurate. The arrest warrant and juvenile detainer had been satisfied four days prior to defendant's arrest. The *Riley* court stated that the N.C.I.C. reports may be reasonably relied upon by officers in effectuating a warrantless arrest and that such reports are sufficiently reliable to form the basis of the reasonable belief needed to establish probable cause. *Id.* 425 A.2d at 815–816. The court pointed out that the officer's state of mind and knowledge were of paramount importance. The officer acted in good faith and could not have reasonably known the information to be false when he made the arrest. The court held that an officer's reasonable reliance on computerized information only

four (4) days out of date can suffice to justify a warrantless arrest. *Id.* at 816.

The Pennsylvania court's reasoning is equally appropriate in the case at bar. There is not the slightest inference that Officer Breuer acted in bad faith. He acted in reliance upon information he believed to be accurate; information from other officers or record keepers widely used by police in our computerized age. The trial judge, who heard the testimony, found the stop appropriate. We agree.

The judgment of the trial court is, therefore, affirmed.

WELLES and HAYES, JJ., concur.