IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 21, 2005 Session

## STATE OF TENNESSEE v. DAVID M. WHITMAN, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-A-111     J. Randall Wyatt, Jr., Judge**

_____

**No. M2004-03063-CCA-R3-CD - Filed December 5, 2005**

_____

The defendant was indicted on two counts of driving under the influence (DUI).  After a bench trial, the defendant was found guilty of both counts, but the trial court merged the counts into one conviction for DUI.  The trial court sentenced the defendant to eleven months and twenty-nine days in the county jail, to be suspended after serving forty-eight hours in jail.  The trial court also revoked the defendant's license for one year and imposed a three hundred fifty dollar fine.  On appeal, the defendant argues that: (1) the arresting officer did not have reasonable suspicion to stop his vehicle; (2) the test results from the breath-alcohol test were inadmissible because the officer failed to observe him for the requisite twenty minutes prior to the administration of the test; and (3) the evidence was insufficient to support his conviction.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

V. Michael Fox and Doug Thurman, Nashville, Tennessee for the appellant, David M. Whitman, Jr.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James Sledge and Michael Rohling, Assistant District Attorney Generals, for the appellee, State of Tennessee.

### OPINION

### FACTS

The following evidence was presented at the suppression hearing and subsequent bench trial.  Officer Coleman Womack of the Metropolitan Police Department testified that on March 19, 2003, at approximately 2:24 a.m., while on patrol, he observed the defendant, driving a 2001 Chevrolet Cavalier.  After pulling behind the Cavalier, he ran a computer check on the Cavalier's license plate

from the laptop computer inside his patrol car. The information from the computer check indicated that the license plate on the Cavalier belonged to another vehicle. Based upon this information, he activated his blue lights and initiated a traffic stop.[1] After the defendant pulled over, his Cavalier started to roll backwards towards Officer Womack's patrol car but stopped before it struck the patrol car.

Officer Womack testified that he approached the defendant's vehicle and informed the defendant that he was stopped because the "tags" on his vehicle belonged to a different vehicle. The defendant then responded, telling Officer Womack that the tags belonged on the Cavalier. Officer Womack stated that at this point, he noticed an odor of alcohol coming from the defendant's person. Officer Womack also noticed that the defendant's eyes were "real watery," and his speech was slurred. Officer Womack described the defendant as "talking really loud" and acting "belligerent."

Officer Womack testified that the defendant produced his driver's license and vehicle registration for the Cavalier, which confirmed that the tags were lawfully on the Cavalier. However, based upon his observations of the defendant, Officer Womack asked the defendant to perform some field sobriety tests. As to the "walk and turn" test, Officer Womack said the defendant failed the test because he missed the heal to toe step several times, stumbled, held his hands out like a bird, and took the wrong number of steps. As to the "one leg stand" test, Officer Womack said the defendant again held his arms out like a bird and hopped around several times. Officer Womack explained that the defendant's actions when taking these two tests indicated impairment because they demonstrated the defendant's lack of coordination and inability to follow instructions. Officer Womack stated that based upon the defendant's poor performance of the tests, he arrested the defendant for DUI and explained the implied consent law to him. Officer Womack then called Officer Kevin Lovell to measure the defendant's blood-alcohol level with a breathalyzer machine. Officer Womack then described the defendant's attitude as "very disrespectful, very uncooperative, hard to get information from, [and] just really hard to deal with the entire time he was in my custody."

On cross-examination, Officer Womack admitted that he observed no bad driving or vehicle equipment violations before conducting the traffic stop. Officer Womack stated that he stopped the defendant's vehicle based solely upon the information he received from his computer check of the vehicle's tags. Officer Womack also acknowledged that the defendant denied drinking. Officer Womack further acknowledged that he did not see any evidence of alcohol in the vehicle. Officer Womack conceded that he formed an opinion as to the defendant's impairment prior to asking the defendant to perform the field sobriety tests. When questioned about the "walk and turn" test, Officer Womack could not recall how many indicators were necessary to indicate impairment.

Officer Kevin Lovell testified that he responded to Officer Womack's request for breath-alcohol testing of the defendant. He explained that he was certified and trained to measure the

---

[1] Officer Womack testified that he receives information from both state and "local Metro" databases. However, Officer Womack did not indicate what database supplied the information regarding the defendant's vehicle registration tags.

concentration of alcohol in the defendant's breath using the Intoxilyzer 1400. He presented photocopies of documents indicating that he was qualified to use the Intoxilyzer 1400 and certifying that the Intoxilyzer 1400, number 572, had been tested by the Tennessee Bureau of Investigation on March 18, 2003, and on June 17, 2003. Officer Lovell stated that he tested the defendant in the parking lot of the Metro Criminal Justice Center. Prior to administering the breath-alcohol test, Officer Lovell detected a strong odor of alcohol on the defendant's breath and noticed the defendant's eyes were red and watery and his speech was slurred.

Officer Lovell testified that he read the implied consent law to the defendant, then observed him for twenty minutes to make sure that he did not place anything in his mouth, burp, regurgitate, or smoke. Officer Lovell presented a videotape of the recorded observation period. Officer Lovell stated that following the observation period, the breath-alcohol test was administered and the results indicated that the defendant's alcohol concentration was .143 percent.

Following the bench trial, the trial court found the defendant guilty of two counts of DUI but merged the counts into one conviction for DUI. The trial court sentenced the defendant to eleven months and twenty-nine days in the county jail, to be suspended after serving forty-eight hours in jail. The trial court also revoked the defendant's license for one year and imposed a three hundred fifty dollar fine.

## ANALYSIS

### A. Investigatory Stop

On appeal, the defendant first argues that the investigatory stop of his vehicle was unconstitutional because the stop was based entirely upon a police computer check, which provided erroneous information regarding the registration of his vehicle. In making his argument, the defendant invokes both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution.

At the onset, we note that our standard of review for a trial court's conclusions of law and application of law to facts on a motion to suppress evidence is de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). However, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. See State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Lawrence, 154 S.W.3d 71, 75 (Tenn. 2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Moreover, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998).

Both the state and federal constitutions protect individuals from unreasonable searches and

seizures.  See U.S. Const. amend. IV; Tenn. Const. art. I, § 7.  Therefore, a search or seizure conducted without a warrant is presumed unreasonable and any evidence discovered subject to suppression.  See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997).  However, the evidence will not be suppressed if the State proves that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.  State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).  One of these narrow exceptions occurs when a police officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense.  Terry v. Ohio, 392 U.S. 1, 21 (1968); Binette, 33 S.W.3d at 218.  This narrow exception has been extended to the investigatory stop of vehicles.  See United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).  Reasonable suspicion for an investigatory stop will be found to exist only when the events which preceded the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the individual stopped.  State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001); State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

Regarding the police officer's initial decision to check the defendant's license plate registration, it is our view that a visual inspection and ensuing police computer check of a vehicle's license plate registration *prior* to an investigatory stop does not implicate federal or state constitutional protections against an unreasonable search or seizure.[2]  For this action to constitute an unreasonable search or seizure, there must exist a reasonable expectation of privacy that is subject to constitutional protection.  Such inquiry involves determining "(1) whether the individual had an actual, subjective expectation of privacy and (2) whether society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances."  State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001) (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)).  It is well-established that an individual has a lesser expectation of privacy in a motor vehicle because its function is transportation and its occupants, contents, and exterior are subject to public scrutiny.  New York v. Class, 475 U.S. 106, 112-13 (1986).  In addition, motor vehicles "are subject to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements.  As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations [are observed] . . . "  Id. at 113 (citations omitted).  Therefore, the longstanding, well-recognized, statutory mandate requiring license plate registration on motor vehicles to be clearly visible and legible supports our conclusion that one cannot reasonably claim privacy in that which is constantly and knowingly exposed to the public.  See generally, Katz v. United States, 389 U.S. 347 (1967); State v. Prier, 725 S.W.2d 667,

---

[2] We note that this case is distinguishable from Delaware v. Prouse, 440 U.S. 648 (1979).  In Prouse, the Supreme Court held that stopping a vehicle and detaining the driver *in order* to check his driver's license and registration is constitutionally unreasonable unless there is articulable and reasonable suspicion that the driver is unlicensed, the automobile is not registered, or that the occupant is otherwise in violation of the law.  Id. at 654.  Notably, the Supreme Court in Prouse stated that its holding did not preclude states from developing methods for "spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion."  Id. at 663.  In this case, the investigative stop was *preceded* by a police computer check, which provided the basis for the stop.

671 (Tenn. 1987).[3]  Consequently, it was permissible for the police officer to check, via computer, the license plate number he observed on the defendant's vehicle without any reasonable suspicion of criminal activity.

Turning to the circumstances surrounding the investigatory stop of the defendant's vehicle, we note that the police officer must formulate reasonable suspicion for an investigatory stop.  As previously indicated, the defendant argues that the investigatory stop was unconstitutional because it was based entirely on erroneous information regarding the registration of his vehicle.  As persuasive authority, the defendant cites State v. Aaron Edwin Aytes, No. E2004-01051-CCA-R9CD, 2005 WL 636650 (Tenn. Crim. App., at Knoxville, Mar. 18, 2005); People v. Ramirez, 668 P.2d 761 (Cal. 1983); and State v. Allen, 690 N.W.2d 582 (Neb. 2005).  In contrast, the State argues that the information from the computer check, albeit erroneous, furnished the police officer with the reasonable suspicion to conduct an investigatory stop.  The State  relies on State v. Rhymer, 915 S.W.2d 465 (Tenn. Crim. App. 1995) as authority.

The defendant's reliance on Aytes and Ramirez is misplaced.  In Aytes, this Court was addressing a probable cause determination for a search incident to an arrest, not evaluating reasonable suspicion.  In Aytes, the police officer stopped the defendant for speeding.  Whereupon an "arrest was prompted by the erroneous information that a probation violation warrant was outstanding for the defendant's arrest."  Aytes, 2005 WL 636650 at *1.  Based upon this erroneous information, the police officer searched the defendant's car incident to the arrest and discovered an illegal handgun.  Id.  This Court held that Tennessee had yet to adopt the good faith exception to the exclusionary rule, which applied to remedy an unconstitutional search.  Id. at *2.  As a result, this Court discerned no basis to overturn the trial court's findings that the search was unconstitutional.  Id.  Similarly, in Ramirez, the California Supreme Court focused on whether the arresting officer had probable cause to arrest the defendant when the arrest was based upon a stale warrant recalled six months earlier.  Ramirez, 668 P.2d at 762.  The Ramirez court determined that "the police may not rely on incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected."  Id. at 764.  The court concluded that the fact that the arrest was based on the communication of erroneous information conveyed through a police computer did not save the arrest.  Id.  However,  neither of these cases discuss whether erroneous information from a police computer check may be the basis for reasonable suspicion to conduct an investigatory stop – a distinction we determine to be of significant importance.

To the defendant's credit, State v. Allen is more persuasive than the other authority cited.  In Allen, a police officer, following a minivan, decided to request a registration check.  Allen, 690 N.W.2d at 586.  The police dispatcher, after mistakenly checking the computer, reported to the officer that the license plate did not match the minivan.  Id.  The officer "stopped the minivan for

---

[3] Tennessee Code Annotated section 55-4-110 states in pertinent part that every registration plate issued for motor vehicles shall be attached on the rear of the vehicle and placed in a position that is clearly visible and in a condition that is clearly legible.

the sole reason that 'the plates didn't match the vehicle.'" Id. Based upon these facts, the Allen court stated the following:

> This is not a case in which police possess factual information supporting a reasonable suspicion of criminal activity which, upon further investigation, proves to be unfounded. Here, there was no factual foundation for the information which the dispatcher transmitted to [the officer], as it is undisputed that the information was false due to the dispatcher's mistake in running the wrong license plate number. [The officer] had no other reason for initiating the stop. Thus, the record reflects that neither [the officer] nor any other law enforcement personnel possessed any true fact which would support the reasonable suspicion necessary to justify an investigative stop. The stop was therefore an unreasonable seizure in violation of the Fourth Amendment.

Id. at 590. The Allen court further stated that "erroneous information created by the negligent conduct of a law enforcement officer cannot be used to support a finding that the officer acted reasonably." Id. at 591 (citations and internal quotations omitted). The court then determined that the good faith exception to the exclusionary rule did not apply to the evidence seized because the erroneous information, which provided the basis for the investigatory stop, was received via police channels. Id. at 590. The court concluded that the "threat of exclusion is likely to cause police officers and dispatchers to exercise greater care than was exercised in this case when obtaining and transmitting vehicle registration information which may be used to justify an investigative stop." Id. at 593.

Although the factual background in Allen is somewhat similar to the factual background in this case, we are unwilling to follow Allen's holding for two reasons. First, Allen is persuasive authority by which we are not bound. Second, and more importantly, Tennessee cases, such as State v. Rhymer, offer more precedential value, and are better suited to guide our analysis of this constitutional issue. To elaborate, in Rhymer, a police officer noticed that the license plate on a grey Volkswagen had marks on it indicating to the officer that the plates might have belonged to another vehicle. Rhymer, 915 S.W.2d at 466. After requesting a registration check from dispatch, the officer was advised that the license plate was registered to a brown Chevrolet. Id. Based upon this information, the officer stopped the Volkswagen and subsequently arrested the defendant for DUI. Id. It was later determined that the information supplied by the police database was erroneous; the license plate was properly transferred from the Chevrolet to the Volkswagen. Id. After analyzing both federal and Tennessee cases, the Rhymer court held that the police officer's reliance on the erroneous information received via computer check[4] coupled by the physical appearance of the license plate provided the officer with reasonable suspicion of criminal conduct. Id. at 468. As the Rhymer court explained, "[t]o hold that police officers could not rely on [information from a police computer database] in forming reasonable suspicion for an investigatory stop would have the effect of unnecessarily tying the hands of officers in countless situations." Id. at 467-68.

---

[4] The information the officer received via computer check was from the National Crime Information Center.

Our supreme court has stated that "[r]easonable suspicion [for an investigatory stop] is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." State v. Pulley, 863 S.W.2d 29, 32 (Tenn. 1993) (citations omitted). In evaluating whether a police officer has reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop; information obtained from other police officers or agencies; information obtained from citizens; and the pattern of operation of certain offenders. See Terry, 392 U.S. at 21; State v. Simpson, 968 S.W.2d 776, 783 (Tenn.1998); Watkins, 827 S.W.2d at 294.

Looking at the facts of this case, it is our view that the information from the computer check, albeit erroneous, provided reasonable suspicion that the defendant was in violation of a traffic law. It is undisputed that the police officer stopped the defendant's vehicle based upon information he received as a result of a computer check, which showed that the defendant's license plate registration belonged to another vehicle. This information came from a source independent of the officer's own knowledge and perceptions. Once the officer learned of the license plate discrepancy, he had an objective basis for suspecting that the defendant was violating a traffic law; and therefore, he was justified in stopping the vehicle and requesting a driver's license and vehicle registration from the defendant. Accordingly, the trial court properly denied the defendant's motion to suppress, and the issue is without merit.

## B. Admissibility Of The Breath Alcohol Test

The defendant next argues that the results from the breath-alcohol test were inadmissible and should have been suppressed because the arresting officer failed to properly administer the test as required by State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). Specifically, the defendant asserts that Officer Lovell conversed with Officer Womack on at least two occasions during the twenty minute observation period; and therefore, Officer Lovell did not properly observe the defendant continuously for twenty minutes prior to administering the breath-alcohol test.[5]

As a preliminary matter, we note that the defendant failed to present this issue in his motion for new trial as required by Rule 3(e) of Tennessee Rules of Appellate Procedure. Ordinarily, the defendant's failure to do so would constitute a waiver of the issue. Tenn. R. App. P. 3(e). See also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). Nonetheless, we will address the merits of the defendant's issue because it relates closely to the defendant's challenge to the sufficiency of the convicting evidence – an issue that is not waived by Rule 3(e).

---

[5] The defendant references the videotape of the twenty minute observation period when asserting his argument.

In State v. Sensing, the Tennessee Supreme Court set forth six requirements that the State must establish before the results of a breath-alcohol test are admissible. Among those requirements, the State must establish "that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate." Id. at 416. While the defendant must be observed for the requisite 20 minutes, Sensing does not require "an unblinking gaze" for 20 minutes. State v. Korsakov, 34 S.W.3d 534, 540 (Tenn. Crim. App. 2000). However, the officer administering the breath alcohol test "must be watching the defendant rather than performing other tasks." Id. The rationale for the twenty minute observation period is to "ensure[] that no foreign matter is present in the defendant's mouth that could retain alcohol and potentially influence the results of the test." State v. Cook, 9 S.W.3d 98, 101 (Tenn. 1999). Each of the Sensing requirements must be established by the State by a preponderance of evidence. State v. Arnold, 80 S.W.3d 27, 29 (Tenn. Crim. App. 2002). On appeal, the trial court's findings of fact regarding the Sensing requirements are presumed correct unless the evidence contained in the record preponderates against them. Korsakov, 34 S.W.3d at 540.

Ruling upon the admissibility of the breath-alcohol test, the trial court found that the test had been properly administered under the requirements of Sensing. The trial court reached its ruling after viewing the videotape of the observation period and considering the testimony of the officers involved in the administration of the breath-alcohol test. Upon review of the evidence, we reach the same conclusion. Officer Lovell testified that he observed the defendant for twenty minutes to make sure that he did not place anything in his mouth, burp, regurgitate, or smoke.[6] While a review of the videotape reflects that Officer Lovell may have made a couple of remarks to another officer, it is unclear from the tape whether Officer Lovell continued to observe the defendant while talking to the other officer or was distracted from watching the defendant. However, it is clear that the trial court considered all the evidence and determined that all of the Sensing requirements were met. Therefore, we conclude that the evidence does not preponderate against the trial court's findings and the court did not err in admitting the results of the breath-alcohol test.

## C. Sufficiency Of The Evidence

The defendant next challenges the sufficiency of the convicting evidence. In challenging the sufficiency to the convicting evidence, the defendant primarily attacks the credibility of Officer Womack and Lovell's testimony. According to the defendant, Officer Womack conceded that no bad driving was observed; and that the defendant produced his driver's license and registration without difficulty and was able to get out of his vehicle without problem. The defendant also asserts that no evidence of alcohol was found in the defendant's vehicle; and the videotape recording of

---

[6] A review of the videotape indicates that the defendant was placed in the back seat of Officer Lovell's police car at approximately 3:13 a.m. At approximately 3:21, the defendant agreed to take the breath-alcohol test. The test was conducted at approximately 3:42.

himself seated in Officer Lovell's patrol car shows that he does not have "red eyes," or "slurred speech."

The defendant further asserts that the trial court afforded too much weight to Officer Womack's testimony regarding the defendant's performance on the field sobriety tests. The defendant points out that Officer Womack acknowledged that the defendant agreed to take the field sobriety tests only after being told he was under arrest. The defendant argues that he was under duress when attempting to perform the tests. The defendant also argues that Officer Womack could not recall from his training how many indicators were necessary to indicate impairment on the "walk and turn" test. The defendant further argues that Officer Womack's admission, that he had formed his opinion as to the defendant's impairment prior to the defendant's field sobriety tests, prejudiced his observations during the tests. Regarding the breath-alcohol test, the defendant contends that Officer Lovell did not observe him properly before administering the test; and therefore, the test results are questionable.

Our review begins with the well-established rule that once a guilty verdict is rendered, the defendant's presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this Court why the evidence will not support the guilty verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, a guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the State's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. Carruthers, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. Bland, 958 S.W.2d at 659. We do not attempt to re-weigh or re-evaluate the evidence. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002).

At the time of the charged offense, Tennessee Code Annotated section 55-10-401[7] provided the following:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

---

[7] Effective July 1, 2003, Tennessee Code Annotated section 55-10-401(a)(2) was amended to read: "The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more."

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is ten one-hundredths of one percent (.10%) or more.

After considering the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the defendant guilty of DUI. At trial, both police officers testified that they detected an odor of alcohol on the defendant, that his eyes were red and watery, and that his speech was slurred. Officer Womack testified that, in his opinion, the defendant failed the field sobriety tests by demonstrating a lack of coordination and inability to follow instructions. Officer Lovell testified that he properly administered a breath-alcohol test, the results of which, registered the defendant's breath-alcohol concentration at .143 percent. The defendant's sufficiency arguments on appeal attack the weight and credibility of the evidence presented by the police officers. The weight and credibility of the police officer's testimony and the reconciliation of conflicts in the testimony, if any, are matters entrusted exclusively to the trier of fact. By its verdict, the trial court accredited the testimony of the officers, and the evidence supports the trial court's verdict. This issue is without merit.

## CONCLUSION

Based upon the foregoing reasons and authority, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE

-10-