# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 16, 2014 Session

## STATE OF TENNESSEE v. KERRY RANDALL MEADOWS

**Appeal from the Criminal Court for Davidson County**
**No. 2012A170     Seth W. Norman, Judge**

___

**No. M2013-01650-CCA-R3-CD - Filed February 10, 2015**

___

Defendant, Kerry Randall Meadows, entered a guilty plea to driving while being an habitual motor vehicle offender pursuant to a negotiated plea agreement and properly reserved a certified question of law for appeal. The precise issue, as reserved, is "[w]hether reasonable suspicion or probable caused existed to stop and seize [Defendant's] vehicle based on incorrect information contained in the police database?" After thorough review we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Chelsea Nicholson, Nashville, Tennessee, for the appellant, Kerry Randall Meadows.

Herbert H. Slatery, III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Elizabeth Foy, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### Facts

On March 23, 2011, Metro Nashville Police Officer Coleman Womack was on routine patrol in the East precinct on the "day shift flex team." While driving in the 1400 block of Dickerson Road, he observed a 1985 Mitsubishi pickup truck that was being driven by Defendant. Officer Womack testified that in the area of Dickerson Road upon which he was traveling, many older model vehicles displayed registration tags that were actually legally

assigned to a different vehicle. He explained that when an older vehicle's tags expired, the owner sometimes used the tag of another vehicle rather than renew the expired tags. For that reason, Officer Womack often used the laptop computer in his patrol car to access a database to see if a particular registration tag was assigned to the vehicle upon which it was displayed. Defendant's 1985 Mitsubishi pickup truck was over twenty-five years old, so Officer Womack "ran" the number, 990 TGD, displayed on the truck through the database. Officer Womack testified that the tag number,

> came back to some type of Pontiac or something, which is once again, it's common when the tag runs out, its expired, if your car won't pass [emissions testing], take the tag off another vehicle and put it onto [sic] yours.

As a result of the information received from the database, Officer Womack stopped Defendant's vehicle. Officer Womack approached the pickup truck and told Defendant he was stopped because the tag number was not assigned to the truck. Officer Womack asked Defendant for his driver's license. Defendant responded that he did not have a driver's license. Defendant provided a non-license identification card and stated that the tag did belong to the truck. Defendant produced a vehicle registration that showed the registration tag on the truck had in fact been properly assigned to the 1985 Mitsubishi pickup truck driven by Defendant.

Vaguely leaving open the possibility that the registration paper produced by Defendant *possibly* could have been a "false" registration, Officer Womack reluctantly conceded that the database provided him with incorrect information. Specifically, Officer Womack testified,

> I'm assuming it gave me erroneous information, yes. I don't know that for a hundred percent, no. . . . I don't think it was [a registration violation], no. I never said - - it's very unusual for that to happen I guess is what I'm saying, I don't - - that doesn't happen once in a, you know, ten years that a tag comes back to something else and somebody hand me the registration showing it's not, so it's very unusual.

In fact, the exact same thing happened to Officer Womack in March 2003, as set forth in an opinion heavily relied upon by the State in its argument in the case *sub judice*, and which will be discussed in the analysis portion of this opinion. *See State v. David M. Whitman, Jr.*, No. M2004-03063-CCA-R3-CD, 2005 WL 3299817 (Tenn. Crim. App. Dec. 5, 2006), *perm. app. denied* (Tenn. May 1, 2006).

Officer Womack testified that he ultimately arrested Defendant for the Class E felony offense of driving while his driving privileges were revoked after being declared an habitual motor vehicle offender. After the indictment for that offense was returned by the Davidson County Grand Jury, Defendant filed a motion to suppress all evidence, asserting Officer Womack made an unconstitutional stop of Defendant without a warrant and without a lawful exception to the warrant requirement. The only person who testified at the suppression hearing was Officer Womack, and the summary of the facts in this opinion comes from that hearing.

Defendant argued that since the only reason Officer Womack initiated the stop was proven to be incorrect information, then there was not a reasonable suspicion, based upon specific and articulable facts, that Defendant was committing a criminal offense. In other words, the facts are that Defendant had a valid registration tag displayed on his vehicle at the time of the stop. Therefore, Defendant argues, a valid warrantless stop could never be based upon his vehicle unlawfully displaying an unauthorized vehicle registration tag.

The State argued at the suppression hearing that the fact that the registration tag did belong to the 1985 Mitsubishi pickup truck did not mean the warrantless stop was unconstitutional. The State asserted that at the time of the stop the information about Defendant's registration tag, even if erroneous, provided specific and articulable facts which gave Officer Womack a reasonable suspicion that a crime was being committed.

The trial court took the matter under advisement and subsequently filed a memorandum opinion denying the motion to suppress. In its findings of fact the trial court stated that Officer Womack received information from the police database that the registration tag attached to the 1985 Mitsubishi pickup truck was assigned to a different vehicle. The trial court found that, in fact, the 1985 Mitsubishi pickup truck driven by Defendant did have the proper registration tag attached to it. The trial court determined that "the State produced evidence to establish the legal justification for the officer to make the stop, however, that information proved to be erroneous."

The trial court relied upon the case of *David M. Whitman, Jr.*, in which Officer Womack on a previous occasion "stopped a vehicle for a registration violation after a computer check of state and local databases erroneously showed the tags belonged to a different vehicle." Based upon the holding of a panel of this Court in *David M. Whitman, Jr.*, that the erroneous information did not negate reasonable suspicion to justify the stop, the trial court denied Defendant's motion to suppress.

**Analysis**

Since this matter is an appeal of a conviction which is the result of a guilty plea, we must review the record to determine that a properly reserved certified question of law, which is dispositive of the case (i.e. we can only affirm the conviction or reverse and dismiss the charges) is presented in this appeal. The State agrees in its brief that the procedural requirements of the rule have been met, and after our review, we agree and accordingly will address the merits of the issue presented by Defendant.

We repeat the issue drafted by Defendant and presented for review:

> Whether reasonable suspicion or probable cause existed to stop and seize [Defendant's] vehicle based on incorrect information contained in the police database?

Tennessee Rule of Criminal Procedure 37(b)(2)(A)(ii) provides that in a proper certified question for appeal, "the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved." The appellate court cannot address a legal issue not included within the stated certified question, *even if* the disposition of the case might be different if the omitted issue had been properly presented. *State v. Day*, 263 S.W.3d 891, 899-900, n. 8 (Tenn. 2008).

Defendant presents as part of his argument on appeal that Officer Womack should have released him to leave as soon as he determined Defendant's pickup truck was properly registered. Defendant argues the officer did not have a constitutional basis to continue detention of Defendant while determining that Defendant was an habitual motor vehicle offender. This issue is not within the scope and limits of the certified question presented and was not presented to the trial court in the suppression hearing. Accordingly, we will not address that precise issue raised on appeal.

As to the specific issue properly presented on appeal, we note that it is phrased such that if either probable cause *or* reasonable suspicion justified the officer's stop of Defendant, even though the information relied upon by the officer was incorrect, then the judgment must be affirmed. We will first address the lesser level of police-citizen intrusion, which is the brief investigatory stop based upon reasonable suspicion of criminal activity by a defendant.

It is well settled that both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures by agents of the State. While the basic constitutional rule is that any warrantless search or warrantless seizure is unreasonable, there are a few specific exceptions

to the rule. *Day*, 263 S.W.3d at 901. There are two levels of police-citizen interaction which constitute a "seizure" for the purpose of constitutional analysis. *Id*. These categories are the (1) full-scale arrest, which must be justified by probable cause that the seized person has committed an offense, and (2) a brief investigatory detention, which must be supported by reasonable suspicion that an offense has been or is being committed, and the reasonable suspicion must be based upon specific and articulable facts. *Id*. As noted above, the "level of reasonable suspicion required to support an investigatory stop is lower than that required for probable cause." *Id*. at 902 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990). However, the officer's reasonable suspicion, in order to justify a warrantless stop, must be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

As specifically pertinent to the case *sub judice*, our supreme court in *Day* stated the following.

> The United States Supreme Court has held that a court must consider the totality of the circumstances when determining whether a police officer's reasonable suspicion is supported by specific and articulable facts. *White*, 496 U.S. at 330.

*Day*, 263 S.W.3d at 903.

In *Day*, our supreme court proceeded to list those circumstances:

    (1) the objective observations of the police officer;

    (2) information obtained from other officers or agencies;

    (3) information obtained from citizens; and

    (4) the pattern of operation of certain offenders.

*Id*. (citing *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992) (which applies the *Terry* doctrine to a vehicular stop)).

Particularly noteworthy as it applies to the case *sub judice* is the following observation and citation by our supreme court in *Day*: "Reasonable suspicion 'is dependent upon both the content of information possessed by police *and its degree of reliability*.' *White*, 496 U.S. at 330." *Day*, 263 S.W.3d at 903 (emphasis added).

Considering the totality of the circumstances in the case under review, we first observe that no information was obtained from any citizens. All of the evidence presented at the suppression hearing came from the testimony of Officer Womack. Officer Womack testified that in the geographical area of the stop, many older vehicles displayed registration tags which were legally assigned to a different vehicle. The trial court did not mention this testimony in its findings of fact. However, the testimony was not challenged during cross-examination by Defendant, and the findings of fact by the trial court strongly imply that the trial court accredited all of Officer Womack's testimony. Accordingly, we conclude that the pattern of operation of certain offenders in the area that Defendant was driving was as testified to by Officer Womack.

Officer Womack observed that Defendant was operating an older vehicle in the area where it was not uncommon for older vehicles to display non-authorized registration tags. Officer Womack obtained information from the police database via the laptop computer in his patrol car that the registration tag affixed to Defendant's 1985 Mitsubishi pickup truck was supposed to be displayed on a different vehicle.

As conceded by the State and specifically found by the trial court, the information relied upon by Officer Womack was incorrect. Under *White*, "reasonable suspicion" depends upon the "degree of reliability" of information possessed by the officer. *White*, 496 U.S. at 330. An obvious question as to the reliability of registration tag information in the police database is raised because a blatant mistake in crucial information has happened twice to the officer in this case. However, the question is merely academic. Officer Womack's credibility as to his testimony that the database sent him incorrect information was not attacked at the suppression hearing. For instance, there was no independent proof presented that what was contained on the database was inconsistent with Officer Womack's testimony. Also, there was no evidence of widespread errors in the database system that would tend to show the database information was not reliable. While the trial court found in its memorandum opinion that Defendant's case was "eerily similar" in facts to an earlier case where Officer Womack was given the identical type of incorrect information, the trial court nevertheless found that Officer Womack was given the incorrect information from the database.

We conclude that the "degree of reliability" of the source of the information possessed by Officer Womack, under the specific facts contained in the record in this case, was sufficient to support reasonable suspicion, based upon specific and articulable facts, that Defendant was committing a violation of the law regarding vehicle registration tags and that the stop was therefore not in violation of the constitutions of the United States or the State of Tennessee.

This conclusion is supported by the decision of a panel of this Court in *State v. David M. Whitman, Jr.*, No. M2004-03063-CCA-R3-CD, 2005 WL 3299817 (Tenn. Crim. App. Dec. 5, 2005). We quote the following from the stated facts in *David M. Whitman, Jr.*:

> The following evidence was presented at the suppression hearing and subsequent bench trial. Officer Coleman Womack of the Metropolitan Police Department testified that on March 19, 2003, at approximately 2:24 a.m., while on patrol, he observed the defendant, driving a 2001 Chevrolet Cavalier. After pulling behind the Cavalier, he ran a computer check on the Cavalier's license plate from the laptop computer inside his patrol car. The information from the computer check indicated that the license plate on the Cavalier belonged to another vehicle. Based upon this information, he activated his blue lights and initiated a traffic stop.
>
> * * *
>
> Officer Womack testified that he approached the defendant's vehicle and informed the defendant that he was stopped because the "tags" on his vehicle belonged to a different vehicle. The defendant then responded, telling Officer Womack that the tags belonged on the Cavalier.
>
> * * *
>
> Officer Womack testified that the defendant produced his driver's license and vehicle registration for the Cavalier, which confirmed that the tags were lawfully on the Cavalier.

*David M. Whitman, Jr.*, 2005 WL 3299817 at *1.

The defendant in *David M. Whitman, Jr.*, like Defendant in the present case on appeal, argued that the investigatory stop of his vehicle was unconstitutional because it was totally based on erroneous information sent by the police database. Relying upon *State v. Rhymer,* 915 S.W.2d 465 (Tenn. Crim. App. 1995), the court in *David M. Whitman, Jr.* rejected the defendant's argument with the following analysis of *Rhymer*.

> [I]n *Rhymer,* a police officer noticed that the license plate on a grey Volkswagen had marks on it indicating to the officer that the plates might have belonged to another vehicle. *Rhymer*, 915 S.W.2d at 466. After requesting a registration check from dispatch, the officer was advised that the license plate was registered to a brown Chevrolet. *Id.* Based upon this

information, the officer stopped the Volkswagen and subsequently arrested the defendant for DUI. *Id*. It was later determined that the information supplied by the police database was erroneous; the license plate was properly transferred from the Chevrolet to the Volkswagen. *Id*. After analyzing both federal and Tennessee cases, the *Rhymer* court held that the police officer's reliance on the erroneous information received via computer check coupled by the physical appearance of the license plate provided the officer with reasonable suspicion of criminal conduct. *Id*. at 468. As the *Rhymer* court explained, "[t]o hold that police officers could not rely on [information from a police computer database] in forming reasonable suspicion for an investigatory stop would have the effect of unnecessarily tying the hands of officers in countless situations." *Id*. at 467-68.

*David M. Whitman, Jr.*, 2005 WL 3299817 at *5.

Applying its analysis of *Rhymer* to the facts of the defendant's case under review, the court in *David M. Whitman, Jr.*, held,

Looking at the facts of this case, it is our view that the information from the computer check, albeit erroneous, provided reasonable suspicion that the defendant was in violation of a traffic law. It is undisputed that the police officer stopped the defendant's vehicle based upon information he received as a result of a computer check, which showed that the defendant's license plate registration belonged to another vehicle. This information came from a source independent of the officer's own knowledge and perceptions. Once the officer learned of the license plate discrepancy, he had an objective basis for suspecting that the defendant was violating a traffic law; and therefore, he was justified in stopping the vehicle and requesting a driver's license and vehicle registration from the defendant. Accordingly, the trial court properly denied the defendant's motion to suppress, and the issue is without merit.

*Id*., 2005 WL 3299817 at *6.

Based upon the decisions in *Rhymer* and *David M. Whitman, Jr.*, we conclude that Defendant is not entitled to relief in this appeal. Accordingly, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE