# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 6, 2012 Session

## STATE OF TENNESSEE v. JACKIE RAY ELKINS

**Appeal from the Criminal Court for Davidson County**
**No. 2010-B-794    Cheryl Blackburn, Judge**

---

### No.  M2012-00238-CCA-R3-CD - Filed May 16, 2013

---

Appellant, Jackie Ray Elkins, was indicted by the Davidson County Grand Jury for one count of possession with intent to sell or deliver not less than one-half of an ounce but not more than ten pounds of marijuana in a drug-free zone.  This charge was the result of a traffic stop in Shelby Bottoms in Nashville, Tennessee and the subsequent search of the vehicle in which Appellant was travelling.  Appellant filed a motion to suppress the proceeds of the search. The trial court denied the motion.  A jury convicted Appellant as charged.  On appeal, Appellant argues that the trial court erred in denying his motion and asks this Court to review his complaint under the plain error rule.  In addition, Appellant argues that the evidence was insufficient to support his conviction.  After a thorough review of the record, we conclude that plain error review is not necessary to do substantial justice and that the evidence was sufficient to support the conviction.  Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Kevin McGee and Richard McGee, Nashville, Tennessee for the appellant, Jackie Ray Elkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

On August 12, 2009, Officer Darrell Howse of the Metro Park Police, was patrolling Shelby Park in Nashville, Tennessee. Around that date, there had been a series of car burglaries, so the park police were patrolling more heavily than normal. Officer Howse noticed Appellant driving a blue Buick Regal out of the parking lot at Shelby Bottoms, which is a very isolated parking lot, as Officer Howse was driving into the area. The Shelby Bottoms area is used by runners to come in and out of a nature trail. Officer Howse became suspicious of Appellant and his passenger because of how they looked and the fact that there were two young people in the car. Officer Howse followed Appellant and ran the license plate number. Office Howse called the Metropolitan Nashville police dispatcher who responded that the license plate in question belonged to a red pick-up truck.

Upon hearing this information, Officer Howse activated his lights and stopped Appellant. By this time, they had traveled to Riverside Drive. Officer Howse approached the car from the rear. As he walked toward the driver of the car, he noticed a radio unit with wires hanging out of it on the backseat. Officer Howse asked the driver for his license and registration. He informed Appellant why he had pulled him over. Officer Howse recalled that Appellant replied that the car he was driving belonged to him. Officer Howse called for backup, and Officer Jerry Moore responded.

Officer Howse testified that about ten minutes after the initial stop, he asked Appellant for consent to search the car. According to Officer Howse, Appellant consented and informed Officer Howse that there was a pound of marijuana in a McDonald's bag behind the driver's seat. Officer Howse searched the vehicle and located the McDonald's bag. In the McDonald's bag he found a set of digital scales and 458 grams of green plant material. Officer Howse also found a Crown Royal bag containing several plastic baggies and green plant material. He also searched Appellant's person. Appellant had $938 in cash. After conducting the search, Officer Howse returned to his car and was informed by the dispatcher that there had been a mistake and the license plate was in fact registered to the blue Regal. Officer Howse had possession of Appellant's driver's license the entire time.

The Davidson County Grand Jury indicted Appellant for one count of possession with intent to sell or deliver not less than one-half of an ounce but not more than ten pounds of marijuana in a drug-free zone. Appellant filed a motion to suppress in which he argued that the stop was invalid based upon the erroneous information regarding the license plate number

and registration. On May 3, 2011, the trial court denied the motion by written order and included the following findings:

> The Court finds that the officer had reasonable suspicion to initiate the traffic stop based off the ultimately erroneous information that the defendant's license plate was registered to another vehicle. Even the defendant acknowledged that the plate was previously registered to a red truck, so the officer obviously did not fabricate the reason for initiating the stop. Once the officer approached the vehicle, he observed in plain sight a suspicious item consistent with potential involvement in automobile burglary. This led the officer to inquire whether the defendant would [ ] consent to a search of the vehicle. After the defendant gave consent, the officer's discovery of the marijuana coupled with the defendant's admission of ownership gave him probable cause to make a full arrest. The Court accredits the testimony of the officer that the correct information regarding the license plate was not received until after the arrest was made.

At the conclusion of a jury trial on May 17, 2011, Appellant was found guilty as charged. The trial court sentenced Appellant to two years with one year as a mandatory minimum sentence length to be served in incarceration and the remaining year to be served on probation.

## ANALYSIS

### Motion to Suppress

On appeal, Appellant argues that the trial court erred in denying his motion to suppress because the officer relied upon erroneous information and, therefore, failed to establish a reasonable suspicion to initiate the stop. Appellant also argues that his consent to the search was invalid because his detention by the officers was unduly prolonged and not supported by reasonable suspicion.

Initially we note, as conceded by Appellant, these issues were not included in his motion for new trial. Appellant urges this Court to analyze these issues under the plain error doctrine. Tennessee Rule of Appellate Procedure 3(e) provides, in pertinent part:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new

trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3.

Additionally, "[a] motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial." Tenn. R. Crim. P. 33(b). Further, a trial court loses jurisdiction with the filing of a notice of appeal. *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). In the case herein, Appellant did not raise these issues in his written motion for new trial. Therefore, we are precluded from considering these issues raised by Appellant on appeal unless they rise to the level of plain error.

In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting this Court's plain error test set forth in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)); *see also* Tenn. R. Crim. P. 36(b).

In *State v. Bledsoe*, 226 S.W.3d 349 (Tenn. 2007), our supreme court revisited the question as to when an issue should be considered under the plain error doctrine. *Id*. at 353-55. In its analysis, the supreme court stressed that appellate courts should use plain error sparingly. *Id.* at 354. The court then stated the following:

> [A]n error "may be so plain as to be reviewable . . . , yet the error may be harmless and therefore not justify a reversal." *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir. 1978); *see Adkisson*, 899 S.W.2d at 642. The magnitude of the error must have been so significant "'that it probably changed the outcome of the trial.'" *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)); *see also United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir. 1987).

*Id.* It is the accused's burden to persuade an appellate court that the trial court committed plain error. *See United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770 (1993). Further, our complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied. *Smith*, 24 S.W.3d at 283.

-4-

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, §7. "'These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'"' *State v. James David Moats*, ___ S.W.3d ___, No. E2010-02013-SC-R11-CD, 2013 WL 1181967, at *4 (Tenn. Mar. 22, 2013) ((quoting *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528, 87 (1967))). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

**Investigatory Stop**

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause or reasonable suspicion that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *Randolph*, 74 S.W.3d at 334; *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. *See Whren*, 517 U.S. at 813-15; *Vineyard*, 958 S.W.2d at 734-35. Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 20-21(1968); *Binette*, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 881 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21; *Binette*, 33 S.W.3d at 218; *Watkins*, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). "An officer making an investigatory stop must be able to articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *Day*, 263 S.W.3d at 902 (quoting *Terry*, 392 U.S. at 27). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Id.*; *Watkins*, 827 S.W.2d at 294 (citing *United States v. Cortez*, 449 U.S. 411 (1981)). A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry*, 392 U.S. at 21.

In the case herein, it is clear that Appellant was "seized" within the meaning of the state and federal Constitutions. Officer Howse testified that he initiated a traffic stop of Appellant's car when he activated his blue lights and pulled up behind Appellant's car. Thus, in order for the stop to be constitutionally valid, Officer Howse must have at least had a reasonable suspicion, supported by articulable facts, that Appellant had committed, or was about to commit an offense.

This Court has previously held that an officer's discovery from a law enforcement agency that the tags on a vehicle are not registered to the vehicle in question is sufficient reasonable suspicion to support an investigatory stop. *See State v. Rhymer*, 915 S.W.2d 465,

467-68 (Tenn. Crim. App. 1995); *State v. David M. Whitman*, No. M2004-03063-CCA-R3-CD, 2005 WL 3299817, at *5-6 (Tenn. Crim. App., at Nashville, Dec. 5, 2005), *perm. app. denied* (Tenn. May 1, 2006); *State v. Johnny Darryl Williams-Bey*, No. M2002-00950-CCA-R3-CD, 2003 WL 21997741, at *5 (Tenn. Crim. App., at Nashville, Aug. 21, 2003), *perm. app. denied* (Tenn. Dec. 22, 2003). Furthermore, such a stop has been upheld when it has later been determined that the information received about the tag is erroneous. *David M. Whitman*, 2005 WL 3299817, at *3-4. This is the same factual scenario in the case at hand. Therefore, Appellant cannot demonstrate that the consideration of this issue is necessary to do substantial justice. Therefore, Appellant is not entitled to plain error review of the investigatory stop of his vehicle.

## Consent to Search

Appellant also questions the constitutionality of his consent to search and argues that the length of his detention was unreasonable. Once again, this issue was not presented in the motion for new trial, and Appellant asks that we review this issue under the plain error doctrine.

The Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution protect individuals from unreasonable search and seizures by law enforcement officers. A search conducted without a warrant is presumptively unreasonable and at a suppression hearing regarding such a search the State bears the burden of proving that the warrantless search was reasonable. *State v. Coulter*, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). This means that the State must prove that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *Binette*, 33 S.W.3d at 218. One exception to the warrant requirement for a valid search is that an individual gives consent to the warrantless search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 90 S. Ct. 2041 (1973). The consent must however, be "unequivocal, specific, intelligently given and uncontaminated by duress or coercion." *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992).

In determining the validity of a consent to search, courts must look at the totality of the circumstances surrounding the obtaining of consent. *United States v. Drayton*, 536 U.S. 194, 122 S. Ct. 2105, 2113 (2002). Although informing an individual of his or her right to refuse consent is not an absolute prerequisite to the validity of a consent to search, it is one circumstance or factor to which courts look in determining the validity of a consent to search. *Id.* Other factors include the consenting individual's age, intelligence, education, the length and nature of the detention and whether the police conduct was coercive or punishing. *United States v. Page*, 154 F. Supp .2d 1320, 1328 (M.D. Tenn. 2001).

Appellant contends that he was detained beyond the time necessary for the officer to complete his investigatory stop. A reasonable traffic stop can become unreasonable and constitutionally invalid if the time, manner, or scope of the investigation exceeds the proper parameters. *See State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002).

The trial court determined that Officer Howse's testimony was credible. Again, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. While the search was not immediately conducted, further brief detention of Appellant and his vehicle were justified by Officer Howse's viewing of the suspicious radio. Moreover, Howse testified that the consent to search the vehicle was given and the marijuana found before the erroneous license tag information was discovered. Under these circumstances ten minutes is not an unjustified delay. Consequently, the trial court properly denied the motion to suppress.

Appellant cannot prove that plain error review is necessary to do substantial justice and, therefore, is not entitled to plain error review.

**Sufficiency of the Evidence**

Appellant argues that the evidence was insufficient to support his conviction for possession with intent to sell or deliver more than one-half ounce but less than ten pounds of marijuana. Appellant concedes that he did possess the marijuana but argues that the State did not prove that he had the intent to sell or deliver the marijuana.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally presumed innocent, the verdict of guilt removes this presumption and replaces it with a presumption of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn.1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the

evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *see Tuggle*, 639 S.W.2d at 914.

Appellant was convicted of a violation of Tennessee Code Annotated section 39-17-417(a)(2), (3). "It is an offense for a defendant to knowingly . . . [d]eliver a controlled substance . . . [or][s]ell a controlled substance." T.C.A. § 39-17-417(a)(2), (3). A violation of subsection (a) is a Class B felony if the person has one-half grams or more of any substance containing marijuana. T.C.A. § 39-17-417(g)(1). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). As stated above, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). The circumstantial evidence "'must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime.'" *Tharpe*, 726 S.W.2d at 900 (quoting *Pruitt v. State*, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)). Further, it is permissible for the jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together. T.C.A. § 39-17-419; *see also State v. Willie Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD, 2002 WL 927604, at *2 (Tenn. Crim. App., at Jackson, May 3, 2002), *perm. app. denied* (Tenn. Oct. 21, 2002) (concluding that jury could infer possession of drugs with intent to sell or

deliver from amount of drugs and circumstances surrounding arrest of defendant); *State v. James R. Huntington*, No. 02C01-9407-CR-00149, 1995 WL 134589, at *3-4 (Tenn. Crim. App., at Jackson, Mar. 29, 1995), *perm. app. denied*, (Tenn. July 10, 1995) (determining that jury could infer intent to sell marijuana primarily from large quantity of marijuana in defendant's possession).

A review of the record reveals that the evidence was sufficient to support Appellant's conviction. Appellant was in possession of a significant amount of marijuana, digital scales, several small baggies, and $938 in cash at the time of his arrest. We determine that this evidence is more than sufficient to support the conclusion that Appellant was intending to sell and/or deliver marijuana. Accordingly, Appellant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE

-10-